[Civ. No. 61290. Second Dist., Div. Three. Oct. 26, 1982.]

GROVER CLEVELAND BELL, Plaintiff and Appellant, v.
JAMES E. HUMMEL et al., Defendants and Respondents.

■■■■■■■■

Counsel

Lewis Metzinger & Associates for Plaintiff and Appellant.

Lewis, D'Amato, Brisbois & Bisgaard, R. Gaylord Smith and Nancy N. Potter for Defendants and Respondents.

Opinion

**O'BRIEN, J.**\*—This is an appeal from the March 19, 1980, order dismissing the action as to defendants James E. Hummel, Robert W. Nowack, and Nowack & Hummel (respondents).[1] The order followed the sustaining of said defendants' demurrer, without leave to amend, to the second amended complaint for legal malpractice.

### Facts

Plaintiffs Grover Cleveland Bell (appellant) and Pearl Elizabeth Bell, husband and wife, brought a legal malpractice action against respondents for the failure to assert a valid claim for damages on their behalf in a previous action against a doctor for medical malpractice. Respondents had represented plaintiff Pearl Bell in the medical malpractice claim alleging negligent performance of a tubal ligation which resulted in an unwanted pregnancy and subsequent birth of a child.[2] In that action respondents did not properly assert a claim for costs to the Bells or either of them of raising the child.

The Bells changed lawyers in October 1977. Although the trial court on January 24, 1978, in the medical malpractice action, did allow Pearl Bell to

---

*Assigned by the Chairperson of the Judicial Council.

[1]The original complaint and subsequent amended complaints all list a fourth defendant, Hummel & Pappas, a partnership. No pleadings have been filed by this defendant, and it is presumed it has not been served.

[2]Although the record is somewhat confusing, it would appear that plaintiffs retained respondents to bring the medical malpractice action in April 1976, after the onset of the pregnancy. They subsequently discovered the alleged legal malpractice in at least October or November 1977.

amend her complaint to assert the costs of raising the child, it denied the request to amend the complaint to add Grover Bell as a plaintiff so to permit him to assert the same claim as well as a claim for loss of consortium. Subsequently, at the trial on January 15, 1979, the court opined that the cost of raising the child was the primary obligation of the father and disallowed Pearl Bell's claim for such damages. She then settled her case. In addition, the new lawyers filed a separate action on January 9, 1978, for Grover Cleveland Bell asserting the claims for loss of consortium and costs of raising the child. A demurrer to that complaint was sustained without leave to amend on June 8, 1978.

The within action was commenced on April 30, 1979, by the law firm of Cheren & Hanover on behalf of plaintiffs Pearl Elizabeth Bell and Grover Cleveland Bell.[3] Demurrer to the second amended complaint was sustained without leave to amend and an order of dismissal followed. The demurrer was based on the statute of limitations for failure to bring the action within one year of the alleged injury. The court held that plaintiff Grover Cleveland Bell's cause of action for legal malpractice occurred, if at all, on January 24, 1978, when the motion to amend the complaint to add his cause of action was denied and that Pearl Bell's remedy was an appeal from the January 15, 1979, ruling rejecting evidence of the costs of raising the child.

At all times up until May 14, 1980, when the notice of appeal was filed, plaintiffs were represented by Cheren & Hanover. The notice of appeal was filed by "Lewis Metzinger & Associates."[4]

Plaintiffs apparently filed a request for dismissal following the sustaining of the demurrer to the second amended complaint. Respondents in their motion to dismiss this appeal and in their brief here attach a request for dismissal form indicating that the entire action was dismissed by the court clerk with prejudice on April 7, 1980. That form appears to have been

---

[3]The second amended complaint was filed November 16, 1979, with Pearl Elizabeth Bell still listed as one of the plaintiffs. It is asserted in appellant's opening brief that Pearl Bell died within six months after the settlement of the medical malpractice case. It is also asserted by appellant counsel's declaration, filed in the lower court, that Pearl Bell's claim was settled after the medical malpractice trial on January 15, 1979, and that after that settlement the within legal malpractice action was filed. Thus, Pearl Bell would have died prior to the filing of the second amended complaint. Moreover, the notice of appeal lists only plaintiff Grover Cleveland Bell as the appellant, as does appellant's opening brief. Therefore, this court is not considering the rights of Pearl Elizabeth Bell or her estate in this appeal, nor do we consider the correctness of the January 15, 1979, ruling that Pearl Bell herself could not recover damages for costs of raising the child.

[4]Lewis Metzinger is also the attorney who took over the medical malpractice action from respondents.

executed by the then attorney for plaintiff, Peter A. Hanover of Cheren & Hanover. This dismissal is not in the record on appeal and neither party had requested that it be included in the record. For reasons noted below, this court does not find it necessary to augment the record so that the "Request for Dismissal" is properly before the court.

### CONTENTIONS

Appellant contends that his actual injury had not been sustained until January 15, 1979, when Pearl Bell's claim for costs for raising the child was rejected by the trial court, and thus the within action having been filed April 30, 1979, was timely. Respondent contends that since in April 1977 (one year after discovering the medical malpractice) the statute of limitations had already run on any medical malpractice claim appellant might have had, that is when he suffered actual injury due to the alleged legal malpractice and thus when the statute of limitations commenced running. Alternatively, respondent urges that appellant's actual injury occurred on January 24, 1978, when the trial court denied the motion to amend the complaint to add his claim. The trial court agreed with this latter contention in sustaining the demurrer. Respondent also contends that since a voluntary dismissal was filed and entered herein prior to the notice of appeal having been filed, this appeal is to no avail. Finally, respondent urges that since the notice of appeal was not filed by the appellant's attorney of record it is of no effect and therefore a sham and this court should dismiss the appeal.

### DISCUSSION

■ A notice of appeal is to be signed by the appellant or his attorney and is to be liberally construed in favor of its sufficiency. California Rules of Court, rule 1. If signed by appellant's attorney, it need not be signed by the attorney of record. (*Estate of Hultin* (1947) 29 Cal.2d 825, 832 [178 P.2d 756].) Moreover, as in *Estate of Hultin,* there are sufficient facts here to infer that Lewis Metzinger was one of appellant's counsel who could sign the notice of appeal inasmuch as he represented appellant during the medical malpractice action. The notice of appeal is therefore not a sham as respondents urge.[5]

---

[5]The court interprets the reference to "581(3)" in the March 19, 1980, order as Code of Civil Procedure section 581, subdivision 3, since there is no "581(3)."

Moreover, although, as respondents state, there is no appeal from the ruling on the demurrer, the ensuing order of dismissal under Code of Civil Procedure section "581(3)" filed on March 19, 1980, is an appealable order. (See *Parenti* v. *Lifeline Blood Bank* (1975) 49 Cal.App.3d 331 [122 Cal.Rptr. 709], questioned on another point, *Wells* v. *Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 787 [176 Cal.Rptr. 104, 632 P.2d 217].) The notice of appeal herein, liberally construed, notices the appeal from that order.

A threshold question is whether the voluntary dismissal presumably filed by appellant's attorney on April 1, 1980, and entered April 7, 1980, renders the subsequent notice of appeal from the March 19, 1980, order ineffective. Under normal circumstances, the notice of appeal, filed May 14, 1980, was timely. Generally, a voluntary dismissal by a plaintiff where the defendant has not sought affirmative relief, as here, is effective immediately and no appeal lies therefrom. Following entry of such a dismissal, the trial court has no further jurisdiction to act in the case except for the purpose of awarding costs and fees as appropriate. (*Associated Convalescent Enterprises* v. *Carl Marks & Co., Inc.* (1973) 33 Cal. App.3d 116, 120 [108 Cal.Rptr. 782]; *Roski* v. *Superior Court* (1971) 17 Cal.App.3d 841, 845 [95 Cal.Rptr. 312].)

However, pursuant to Code of Civil Procedure section 581, subdivision 1, a plaintiff's voluntary dismissal must be made "at any time before the actual commencement of trial." That right to do so ends when a trial court order sustains a general demurrer without leave to amend. This is so because such a ruling is a conclusive determination of the litigation on its merits and therefore a "trial." (*Wells* v. *Marina City Properties, Inc., supra,* 29 Cal.3d 781; *Goldtree* v. *Spreckels* (1902) 135 Cal. 666 [67 P. 1091].) Accordingly, since the demurrer in this case had already been sustained without leave to amend and the order of dismissal filed and entered prior to the request for dismisal, appellant had no right to voluntarily dismiss the action. The dismissal entered on April 7, 1980, pursuant to plaintiffs' "Request for Dismissal" was therefore improper. That being the case, appellant's notice of appeal is intact and this court proceeds to determine the merits of the appeal.

The essential question is when did the statute of limitations commence running on appellant's claim for legal malpractice.[6] The statute of limitations for legal malpractice commences to run when the client discovers or should have discovered his cause of action, and prior to Janury 1, 1978, if based on tort or breach of an oral contract, the limitations period is two years. (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176 [98 Cal.Rptr. 837, 491 P.2d 421].) After that date the statute of limitations for legal malpractice is established as one year after plaintiff discovers or should have discovered the facts constituting the malpractice or four years from the actual date of the wrongful act, whichever occurs first. The period is tolled during the times, inter alia, plaintiff has not sustained actual injury or the errant attorney continues to represent the plaintiff regarding the specific matter in which the malpractice occurred. Code of Civil Procedure section 340.6.

---

[6]For the purposes of the appeal, this court assumes the appellant would have had a valid claim in the medical malpractice case had it been timely presented.

 Respondents urge that the statute of limitations for the alleged legal malpractice began to run on April 10, 1977, one year after discovering the medical malpractice,[7] and thus the last date such an action could be brought. In October 1977 respondents ceased acting as appellant's attorney in the medical malpractice case. Concurrently, appellant discovered the legal malpractice.[8] Accordingly, at least from April 1976, when it appears respondents were first retained to handle the malpractice action, until October 1977, the running of the statute of limitations was tolled. (Code Civ. Proc., § 340.6, subd. (a)(2).)

There are two stages in the determination of whether a legal malpractice action is time barred. First, we must determine when the cause of action accrued; and second, we determine when the statute of limitations starts to run. A cause of action for legal malpractice does not accrue until a client suffers damage as a result of a wrongful act, and the statute of limitations does not begin to run until the client discovers or should reasonably have discovered the elements of his cause of action. (*Neel v. Magana, Olney, Levy, Cathcart, & Gelfand, supra,* 6 Cal.3d 176; *Budd v. Nixen* (1971) 6 Cal.3d 195, 199 [98 Cal.Rptr. 849, 491 P.2d 433].) Even after knowing of a wrongful act, if there is no actual irremediable damage, there is no running of the statute of limitations. (See *Budd,* at p. 202; *Southland Mechanical Constructors Corp.* v. *Nixen* (1981) 119 Cal.App.3d 417, 432 [173 Cal.Rptr. 917].)

 Appellant's claim for loss of consortium was separate and apart from any claim for costs of support for the child and would have to stand on its own in determining when its cause of action therefor accrued. Although determination of the time when appellant suffered damages is a question of fact, *Budd v. Nixen, supra,* 6 Cal.3d 195, 202, here appellant admits, at least, that he discovered the possible legal malpractice in November 1977. However, until he had suffered actual damages, the running of the statute of limitations was tolled. It is not necessary that all or even the greater part of the damages have to occur before the cause of action arises. It is sufficient if "[a]ny appreciable and actual harm flowing from the attorney's negligent conduct" has occurred. (*Budd* at p. 201.) The discovery of respondent's alleged negligence occurred in at least November 1977 with the impact and

---

[7] The April 10, 1977, date arises from a letter written by Attorney Lewis Metzinger to appellant and his wife on October 27, 1977, wherein he refers to their learning of the pregnancy on April 10, 1976.

[8] Appellant admits to discovery in November 1977 although the record reflects a letter to appellant dated October 27, 1977, from Lewis Metzinger informing him and his wife of the alleged malpractice.

accrual of the damages following in January 1978[9] when the new attorney failed in his attempt to rectify the previous mistake. After that, there was nothing further that need to have occurred to make appellant's claim for loss of consortium viable. Until the court denied appellant the right to join his wife's complaint as a coplaintiff in order to assert his claims arising from the alleged medical malpractice, his damage had not fully accrued. It was not until then that his claims were lost and the full impact of the wrongful acts settled leaving damage that was for all practical purposes irremediable. (See *Southland Mechanical Constructors Corp., supra,* 119 Cal.App.3d 417, 433.) Prior to that time appellant had only seen that his attorney had committed an error, but no appreciable harm had resulted from the error until it could not be rectified, i.e., could not be remedied or cured. Up until that time, his damage was prospective and the statute of limitations was tolled. (See Code Civ. Proc., § 340.6, subd. (a)(1).)

Appellant also argues that since Pearl Bell's claim for costs of rearing the unwanted child was viable until January 1979, appellant thus had not suffered actual damage and therefore his cause of action for such costs had not accrued until Pearl Bell's claim was stricken. This argument rests on the analysis that Pearl Bell's cause of action for the same damages he was seeking was a community asset and it was not until that asset was destroyed did appellant suffer ultimate injury. It does not follow that just because the claims of appellant and Pearl Bell were community property, Civil Code section 5126, that their respective rights are evaluated in tandem. Each parent has the statutory duty to support his/her children. (Civ. Code, § 196; see *Faitz* v. *Ruegg* (1981) 114 Cal.App.3d 967, 972 [171 Cal.Rptr. 149].) Thus, with appellant being liable for the costs of rearing the child, he then had a separate claim for recoupment of those costs. The fact that a claim, such as we have here, represents a community asset does not change its character from that of being personal to each of its claimants. Moreover, the fact that Pearl Bell's claim for legal malpractice was still viable until January 1979 does not toll the statute of limitations as to appellant. Statutes of limitation are tolled only for limited reasons, none of which apply here. (Code Civ. Proc., § 340.6; see *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand, supra,* 6 Cal.3d 176, 189, fn. 26.)

The statute was tolled during the time respondents were representing appellant and was tolled from the date of discovery in October/November

---

[9]Arguably, the reason for denial by the trial court of the request to allow the addition of appellant as plaintiff in January 1978 was because the statute of limitations had run, i.e., more than one year after April 10, 1976, had passed, but that allowing Pearl Bell's amendment was proper because she had filed her foundational action within the limitations' period.

1977 until the actual injury resulting therefrom. It began to run at the same time appellant's cause of action accrued, January 24, 1978.[10]

CONCLUSION

Appellant's cause of action accrued and the statute of limitations began to run on January 24, 1978, and thus the within action filed April 30, 1979, was too late. The order of dismissal is affirmed.

Klein, P. J., and Lui, J., concurred.

---

[10]Under the applicable statute of limitations in 1977, appellant would have had two years to bring his legal malpractice action. (See *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand, supra,* 6 Cal.3d 176, 182.) This was changed to one year commencing January 1, 1978. The Legislature may shorten a procedural statute of limitations and apply it retroactively provided a "reasonable opportunity" is given to exercise a remedy which would otherwise be materially affected by the new statute of limitations. (See *Eden* v. *Van Tine* (1978) 83 Cal.App.3d 879, 886-887 [148 Cal.Rptr. 215, 12 A.L.R.4th 856].) Appellant here was given a year after January 1, 1978, more than a reasonable time, to file his action after the new one-year statute of limitations became effective, and consequently the new statute may be applied to appellant, see *Rosefield Packing Co.* v. *Superior Court* (1935) 4 Cal.2d 120, 122-123 [47 P.2d 716], even though he might have argued that he had until October 1979 or January 1980 to bring his action under the previous law.