[No. C009062. Third Dist. June 12, 1991.]

SHERMAN JOHNSON, Plaintiff and Appellant, v.
JAMES J. SIMONELLI et al., Defendants and Respondents.

## Counsel

McCarthy, Leonard & Spain, McCarthy & Leonard and Brian McCarthy for Plaintiff and Appellant.

Bolling, Walter & Gawthrop, George E. Murphy, Debora K. Dragland and Mark A. Campbell for Defendants and Respondents.

## Opinion

**MARLER, J.—** ██ Plaintiff, Sherman Johnson, appeals from a summary judgment in favor of defendants, James J. Simonelli and Simonelli, Simonelli & Carash, a professional law corporation, after the trial court determined that plaintiff's action for attorney malpractice was barred by the statute of limitations.[1] We shall affirm.

### Facts

Plaintiff retained defendants on June 1, 1981, to represent him in connection with the sale of his business, Vogue Cleaners. Defendants prepared a document dated August 1, 1981, and entitled agreement of sale and sale of assets of Vogue Cleaners, which provided plaintiff would sell his laundry and dry cleaning business to Rollie M. Pennington and Andrew Piegnet, Jr., for $125,000. A portion of the purchase price was paid in cash and the buyers executed a promissory note for the remaining balance of $117,000. The contract provided the promissory note would be secured by the equipment of Vogue Cleaners, the equipment and inventory of St. Mark's Dry Cleaners, which was owned by Pennington, and a deed of trust on Piegnet's house at 617 Kermit Court. At the time of the sale, plaintiff was aware there were two prior trust deeds on Piegnet's house and that there was a prior

[1] The action was originally commenced in 1985 by Sherman Johnson and his wife Violet. According to plaintiff's opening brief, Violet Johnson died in November 1989. It is also interesting to note that on June 11, 1990, a notice of appeal was filed which stated Sherman and *Violet* Johnson appealed from the court's judgment. Although Violet's cause of action survives her death (Code Civ. Proc., § 385; Prob. Code, § 573) a trial cannot proceed and judgment cannot be given for or against the decedent, nor for or against the decedent's personal representative until the latter has been made a party by substitution. (*Herring* v. *Peterson* (1981) 116 Cal.App.3d 608, 611-612 [172 Cal.Rptr. 240]; 4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 283, p. 338.) If Violet died in 1989, the court's judgment entered against Violet in 1990 was in excess of its jurisdiction and void as it was entered against a person who was no longer a party. (*Herring* v. *Peterson, supra*, 116 Cal.App.3d at pp. 611-612; *Estate of Edwards* (1978) 82 Cal.App.3d 885, 893 [147 Cal.Rptr. 458]; *Bliss* v. *Speier* (1961) 193 Cal.App.2d 125, 126-127 [13 Cal.Rptr. 847].)

encumbrance of $85,000 on St. Mark's Cleaners. Defendants reviewed Pennington's financial statement and advised plaintiff "there were not enough assets."

After the contract of sale was executed, the buyers took possession of Vogue Cleaners and on July 12, 1983, they defaulted on the note which had a remaining balance of $112,000. Soon thereafter, plaintiff retrieved his entire file from defendants and transferred it to another attorney, David Ross. Plaintiff consulted Ross about enforcing his security interests and Ross advised plaintiff to forget about collecting the debt from the buyers and to declare bankruptcy instead. Plaintiff prepared a list of creditors and paid Ross $500 to commence the bankruptcy proceeding, but later decided not to pursue the matter.

Plaintiff sought the advice of another attorney, Patrick Riddle, concerning plaintiff's legal remedies against the buyers. Riddle explained that the security for the balance of the promissory note was defective and inadequate. Riddle determined there was less than $20,000 available equity in the Kermit Court residence. At the time plaintiff first consulted Riddle, plaintiff had executed a declaration of default on the Kermit Court trust deed, had commenced foreclosure proceedings and had received a trustee's sale guarantee showing two prior encumbrances.

On June 22, 1984, plaintiff attempted to enforce his security interest in Vogue Cleaners by conducting a public lien sale. No one attended the sale except plaintiff and Riddle and plaintiff made a credit bid of $50,000 for the property. Plaintiff subsequently sold Vogue Cleaners for $7,000. Plaintiff concedes that as of June 1984, he was aware of the inadequacy of the collateral securing the promissory note.

On October 31, 1985, plaintiff filed a complaint against Pennington asserting causes of action for conversion, breach of contract and judicial foreclosure. Plaintiff sought $64,397.18, the balance due on the note after the application of plaintiff's credit bid, plus interest, attorney's fees and costs as provided for in the promissory note. Plaintiff did not pursue his remedies against Piegnet as Piegnet was bankrupt.

On December 5, 1985, plaintiff filed a complaint against defendants for attorney malpractice. According to plaintiff, but for the defendants' negligent failure to warn him that additional security was necessary and the defendants' negligent failure to file appropriate financing statements, plaintiff would have been able to collect the whole purchase price agreed upon in the contract of sale.

In ruling on defendants' motion for summary judgment, the trial court concluded that plaintiff discovered defendants' conduct was negligent prior to December 1984 and that by June 22, 1984, plaintiff had suffered actual, appreciable and irreversible harm. Because this occurred more than one year prior to the filing of his complaint, plaintiff's action was barred by the statute of limitations. (Code Civ. Proc., § 340.6.)[2]

## DISCUSSION

Plaintiff contends the court erred in granting defendants' motion for summary judgment because defendants failed to establish plaintiff had sustained actual harm more than one year prior to the filing of his complaint. We disagree.

The statute of limitations in a legal malpractice action does not begin to run until the client discovers, or should have discovered, the attorney's negligence and the client has sustained actual and appreciable harm. (*Budd* v. *Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433]; *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 194 [98 Cal.Rptr. 837, 491 P.2d 421]; *Robinson* v. *McGinn* (1987) 195 Cal.App.3d 66, 73 [240 Cal.Rptr. 423].) Speculative harm, or the threat of future harm arising from the breach of a professional duty, does not suffice. (*Budd* v. *Nixen, supra*, 6 Cal.3d at p. 200.)

Ordinarily, the determination of the time when a plaintiff suffered damages giving rise to a cause of action for attorney malpractice is a question of fact, but where there are no triable issues of fact as to when the plaintiff suffered such damage then a court may determine this as a matter of law. (*Budd* v. *Nixen, supra*, 6 Cal.3d at p. 202; *Southland Mechanical Constructors Corp.* v. *Nixen* (1981) 119 Cal.App.3d 417, 433 [173 Cal.Rptr. 917].) Hence, to succeed on their motion for summary judgment defendants were required to establish as a matter of law that plaintiff sustained actual injury more than one year prior to the filing of his complaint. Defendants met this burden.

The thrust of plaintiff's malpractice claim is that defendants failed to warn and inform plaintiff that the security for the note was inadequate and

[2]Section 340.6 provides in pertinent part: "(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exists: [¶] (1) The plaintiff has not sustained actual injury. . . ."

failed to adequately investigate the security and advise plaintiff of the risk attendant to the sales transaction. According to plaintiff, if defendants had exercised appropriate care and warned plaintiff of the need for additional security, plaintiff would have foregone the transaction altogether or obtained more security and hence have been able to collect the entire purchase price by means of enforcing the security. In other words, defendants allowed plaintiff to consummate the sales transaction in 1981 without being protected by adequate security. But this inadequacy created only the potential for injury to the plaintiff. So long as the buyers continued to meet their obligation under the promissory note, plaintiff had no need or right to resort to the security. Once the buyers defaulted in July 1983, plaintiff was harmed by the absence of sufficient security to cover the balance owing on the note.

We may presume the security was inadequate at that time, as otherwise plaintiff would have no cause of action against defendants. Defendants have committed no malpractice unless, due to the their negligence, there was insufficient security to make plaintiff whole upon the buyers' default. Due to this lack of security, if plaintiff wished to recover the money owed to him, he was required to resort to the very process he hired defendants to avoid: a lawsuit against the defaulting buyers, with its attendant legal expenses. That plaintiff *might* recover the money owed to him from the buyers does not negate the fact that he was deprived in 1983 of something he would have received but for defendants' alleged negligence, i.e., sufficient security to cover the entire balance owing on the note. Moreover, plaintiff had been deprived of the value of the attorneys' fees that had been paid to defendants for their services in negotiating the 1981 transaction as plaintiff did not receive the benefit for which he had bargained. Hence, at the time of default on the note if the security was adequate, plaintiff had no cause of action; if the security was inadequate actual injury occurred and the statute of limitations commenced running.

Relying on *Bell* v. *Hummel* (1982) 136 Cal.App.3d 1009 [186 Cal.Rptr. 688] and *Robinson* v. *McGinn, supra,* 195 Cal.App.3d 66, plaintiff contends the statute of limitations has not begun to run because he has not suffered an actual injury until the injury is shown to be irremediable. Plaintiff believes his injury is not irremediable because it has not been established that he will never recover the balance owing on the note from the buyers. Plaintiff's contention is not well founded.

A recent case out of the Fourth Appellate District, *Laird* v. *Blacker* (1991) 229 Cal.App.3d 159 [279 Cal.Rptr. 700], expressly rejects the judicially created requirement that a plaintiff's injury be irremediable before the statute of limitations begins to run in an attorney malpractice action. There is nothing in Code of Civil Procedure section 340.6 that requires that a

plaintiff's injury be irremediable. (See fn. 2, *ante*; see also 2 Mallen & Smith, Legal Malpractice, § 18.11 and fn. 18, p. 105.) The plaintiff need only sustain an actual injury. (Code Civ. Proc., § 340.6, subd. (a)(1).) In the present case, plaintiff sustained an actual injury in July 1983, when the buyers defaulted on the note.

The use of the term "irremediable" appears to have its genesis in *Heyer* v. *Flaig* (1969) 70 Cal.2d 223 [74 Cal.Rptr. 225, 449 P.2d 161]. In that case, the Supreme Court addressed the issue of when the statute of limitations would begin to run in an attorney malpractice action brought by the intended beneficiaries of a will and based upon the attorney's negligent drafting of the will. (*Id.* at p. 225.) The court determined the statute began to run when the testator had died and the attorney's error became irremediable. (*Id.* at pp. 225, 230.) The court did not state that the plaintiff's injury must be irremediable, especially not in the sense used by plaintiff, which appears to be that the loss is not recoverable from any other source.

In *Bell* v. *Hummel, supra,* 136 Cal.App.3d 1009, because the defendant attorney negligently failed to join the plaintiff's husband as a coplaintiff in a medical malpractice case, the husband was unable to assert a loss of consortium claim. (*Id.* at pp. 1012-1013.) The appellate court held that the statute of limitations did not begin to run until the trial court denied the husband's motion to be added as a plaintiff, as at that point the harm became irremediable. (*Id.* at pp. 1016-1017.) In *Robinson* v. *McGinn, supra,* 195 Cal.App.3d 66, due to the defendant attorney's negligent advice, the plaintiff, who had been injured during the course of his employment, resigned from his employment prior to obtaining a disability pension. (*Id.* at pp. 69-71.) The appellate court determined that until there was an adverse administrative determination on plaintiff's attempt to obtain reinstatement or a disability pension, then the harm caused by the attorney's negligence was not irremediable and the statute of limitations had not commenced to run. (*Id.* at p. 75.)

Although *Bell* and *Robinson* speak of the plaintiff's injury being irremediable, the facts of these cases show that the courts were actually concerned, as was the court in *Heyer* v. *Flaig*, with when the attorney's error or negligence became irremediable. In both *Bell* and *Robinson*, the available judicial and administrative remedies, if successful, would have remedied the malpractice. In *Bell*, the plaintiff would have been able to assert his loss of consortium claim; in *Robinson*, the plaintiff would have been reinstated in his job or received a disability pension. In the present case, the alleged negligence of defendants will not be cured by pursuing collection of the debt by judicial remedy against the defaulting buyers. A judgment against the buyers will not provide plaintiff with adequate security, ensure that the debt

will be paid, or provide plaintiff with a judgment reflecting the injuries already caused by defendants.

Since defendants established plaintiff discovered the alleged malpractice in June 1984 and was harmed when the buyers defaulted in July 1983, the court did not err in granting summary judgment on the ground the complaint, filed in December 1985, was barred by the statute of limitations.

### DISPOSITION

The judgment is affirmed.

Carr, Acting P. J., and Raye, J., concurred.