[No. B061478. Second Dist., Div. Four. Sept. 27, 1993.]

THEODORE SLAVIN, Plaintiff and Appellant, v.
VAL TROUT II, Defendant and Respondent.

## COUNSEL

Caprice L. Collins and Charles E. Mashburn for Plaintiff and Appellant.

Gelfand and Gelfand, Earl H. Greenstein and Gary B. Gelfand for Defendant and Respondent.

## OPINION

**VOGEL (C. S.), J.**—In this action by a secured lender against a real estate appraiser for professional negligence, the trial court granted summary judgment in favor of the defendant (Code Civ. Proc., § 437c, subd. (c)) on the ground the plaintiff's action is barred by the two-year statute of limitations. (Code Civ. Proc., § 339, subd. 1.)

There is no dispute as to the underlying dispositive facts. ■ The issue on appeal is the date the cause of action accrued, which on undisputed facts is a question of law as to which summary judgment is appropriate. (E.g., *Johnson* v. *Simonelli* (1991) 231 Cal.App.3d 105, 109 [282 Cal.Rptr. 205].)

We reverse, concluding that the plaintiff secured lender did not sustain actual and appreciable harm from his reliance on the defendant's appraisal, so as to commence the running of the statute of limitations, until plaintiff acquired the property at a foreclosure sale following the borrower's default.[1]

### FACTS

Plaintiff and appellant Theodore Slavin, an investor, had an ongoing relationship with Allstate Home Loans, Inc., a licensed real estate broker, under which he lent money secured by second trust deeds on real property. Defendant and respondent Val Trout II is a real estate appraiser. In November 1986, Allstate arranged for Trout to appraise the Rulli residence at Big Bear Lake. Trout appraised the property at $290,000.

In reliance on Trout's appraisal and the advice of Jerry Wexler (Allstate's president), Slavin agreed to lend $85,000 secured by a second trust deed. The first trust deed loan was for $100,000. If Trout's $290,000 appraisal were accurate, the transaction satisfied Slavin's investment standard that the loan-to-value ratio for both encumbrances not exceed 65 percent.

In November 1986, Slavin paid $85,000 based on a promissory note from Rulli secured by a second trust deed on the property. The note provided for 13 monthly payments of $1,027 and a balloon payment of $86,027 due January 15, 1988.

---

[1]The sole ground of the summary judgment and sole issue on appeal is the statute of limitations. We do not address the liability of an appraiser for negligence. (See generally *Christiansen* v. *Roddy* (1986) 186 Cal.App.3d 780, 785-787 [231 Cal.Rptr. 72]; Mastaglio, *Real Estate Appraisal Malpractice: Liability and Damages* (Jan. 1982) 54 N.Y. State Bar J. 6; see also *Barry* v. *Raskov* (1991) 232 Cal.App.3d 447, 453-457 [283 Cal.Rptr. 463] [liability of mortgage loan broker for negligence of independent appraiser hired to appraise the securing property]; Malloy, *Lender Liability for Negligent Real Estate Appraisals*, 1984 U.Ill.L.Rev. 53.)

In March 1987, Rulli defaulted. Allstate on behalf of Slavin commenced foreclosure proceedings. A foreclosure sale scheduled for October 1, 1987, was stayed when Rulli filed federal bankruptcy proceedings. Relief from the bankruptcy stay was not obtained until a year later, in October 1988.

Jerry Wexler, president of Allstate, became suspicious about Trout's appraisal when in March 1988 he obtained another and much lower appraisal. After consulting with Slavin, and on Slavin's behalf with Slavin's permission, Wexler wrote a letter to Trout on March 23, 1988. The letter stated, "There seems to be a large difference in the value of [the property] that was originally appraised by you on November 22, 1986, and the results of a reappraisal that was done approximately two weeks ago [appraised as of the date of Trout's original appraisal]. [¶] Please call me so that we can discuss this matter, as it is of a serious nature, and the difference in the appraisals are [*sic*] to [*sic*] large to ignore." A few days later Wexler told Trout that the reappraisal was 50 percent lower than Trout's, and that because of Trout's poor appraisal " 'we are going to lose almost $100,000.' "

After obtaining relief from the bankruptcy stay, Slavin purchased the property at a foreclosure sale conducted October 7, 1988. Slavin bid $115,325, the amount of the obligation on his loan, plus costs and fees, and received a trustee's deed of sale.

After incurring substantial additional expenses maintaining the payments on the first trust deed loan and evicting Rulli, Slavin sold the property to a third party in September 1989 for $180,000, which, after paying off the first trust deed loan, netted him $65,426.

Slavin filed the instant complaint August 3, 1990. Slavin alleged that Trout negligently appraised the property at $290,000, which was much higher than its actual value, that Slavin relied on Trout's appraisal in making the loan, and that Slavin was thereby damaged.

## DISCUSSION

■ The parties agree the applicable statute of limitations is two years, under Code of Civil Procedure section 339, subdivision 1, which refers to an action on an obligation or liability not founded upon an instrument of writing. This section is commonly applied to negligence by professionals which damages intangible property interests. (*Laird* v. *Blacker* (1992) 2 Cal.4th 606, 610 [7 Cal.Rptr.2d 550, 828 P.2d 691]; *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 182 [98 Cal.Rptr. 837, 491 P.2d 421]; 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 440, p. 470.)

A cause of action in tort for professional negligence does not accrue until the plaintiff both (1) sustains damage and (2) discovers, or should discover, the negligence. (*Budd* v. *Nixen* (1971) 6 Cal.3d 195, 203 [98 Cal.Rptr. 849, 491 P.2d 433].) Slavin contends that although he discovered Trout's negligence by March 1988, more than two years before filing the complaint, he did not sustain damage from Trout's malpractice, commencing the running of the statute of limitations, until he acquired the property at the foreclosure sale less than two years before filing the complaint. In other words, Slavin contends this is the "unusual case" (*Budd* v. *Nixen, supra,* at p. 203) in which the negligence was discovered before the damage occurred. We agree.

*Budd* v. *Nixen, supra,* discusses the damage which must be sustained in order for a cause of action to accrue and the statute of limitations to commence running. *Budd* involved an attorney malpractice claim which at that time was also governed by Code of Civil Procedure section 339. The court stated: "The mere breach of a professional duty, causing only nominal damage, *speculative harm, or the threat of future harm—not yet realized—* does not suffice to create a cause of action for negligence. [Citation.] Hence, until the client *suffers appreciable harm* as a consequence of his attorney's negligence, the client cannot establish a cause of action for malpractice." (6 Cal.3d at p. 200, italics added.)

Although Slavin relied on Trout's appraisal in 1986 by lending money secured by a second trust deed, Slavin did not immediately suffer damage thereby. Slavin became a secured lender, who could resort to the property as security *if* the borrower failed to perform the obligation to make payments on the loan. (Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar 1990) § 1.2, p. 4.) Trout's alleged negligence in evaluating the adequacy of the security "created only the *potential* for injury to the plaintiff. So long as the [borrowers] continued to meet their obligation under the promissory note, plaintiff had no need or right to resort to the security." (*Johnson* v. *Simonelli, supra,* 231 Cal.App.3d 105, 110, italics added.)[2]

---

[2] Two commentators have described the process as follows:

"The lender . . . may seek an appraiser's opinion as to the value of property in order to assure himself that, in the event of default, he will have adequate security. The lender first looks to normal sources of repayment, and, only after default, does he turn to the security. . . . [T]he security is the lender's insurance against a mistaken credit decision respecting the ability of the borrower to repay the loan. [¶] [The loss the lender suffers from the appraiser's negligence] arises from the fact that the lender found himself in a situation where, when faced with a defaulted loan, he had to look to security that was substantially less in value than had been contemplated." (Mastaglio, *op. cit. supra,* 54 N.Y. State Bar J. at p. 10.)

"Erroneous appraisals could also be problematic from the standpoint of foreclosure. If a property was overvalued and consequently overfinanced, a subsequent foreclosure on the

*Johnson* v. *Simonelli, supra,* is a substantially similar case. The plaintiff retained defendant attorneys regarding the sale of plaintiff's business. Plaintiff received a promissory note for most of the purchase price, secured by certain property owned by the buyers. The theory of plaintiff's suit against defendant attorneys was that defendants negligently failed to determine that the security afforded by the buyers' property was inadequate. The buyers defaulted in July 1983; plaintiff obtained the property at a public lien sale in June 1984; plaintiff filed his complaint against defendant attorneys in December 1985. The appellate court upheld a summary judgment on statute of limitations grounds, holding that the plaintiff suffered actual and appreciable harm when the buyers defaulted in July 1983. (*Johnson* v. *Simonelli, supra,* 231 Cal.App.3d at p. 110.)

We agree with the basic premise of *Johnson* that a secured lender does not suffer actual and appreciable harm from reliance on an overvalued appraisal until "resort to the [inadequate] security." We decline to adopt the holding of *Johnson* which fixed the default as the point in time when the statute of limitations commences to run. The lender's resort to the property does not occur until later and it is at that point the lender suffers appreciable harm.

Both as a matter of statute and practical reality, a borrower's default does not give the secured real estate lender resort to the property. The property cannot be obtained even under a trustee's power of sale without first complying with a detailed statutory scheme which provides opportunities to cure any defaults and reinstate the loan and trust obligations. (Civ. Code, §§ 2924-2924k; see generally Cal. Mortgage and Deed of Trust Practice, *supra,* ch. 2.) Notice of default must be recorded, and no less than three months must elapse before notice of sale is given. (Civ. Code, § 2924.) Within the period between the recording of notice of default and five days before the date of sale fixed in the notice of sale, reinstatement can be accomplished (Civ. Code, § 2924e) by payment of the amounts in default plus costs and fees. (Civ. Code, § 2924c, subd. (a)(1).)[3]

These statutory procedures require substantial time, much of it beyond the lender's control. In the instant case, the time was extended even further by

mortgage could result in a low price at the foreclosure sale, reflecting the property's true value. . . . [T]he junior lender could be left with no security to support the loan if the property at the time of foreclosure is actually worth less than the combined outstanding balance of both the junior and senior lenders' loans." (Malloy, *op. cit. supra,* 1984 U.Ill.L.Rev. at pp. 59-60.)

[3]Unlike this case, *Johnson* involved both a deed of trust on real property and a security interest in equipment and inventory. As to the latter type of collateral, a secured lender has more expeditious means under the California Uniform Commercial Code to take possession of and sell the collateral, than does a real estate lender secured by a deed of trust on the real property. (Cal. U. Com. Code, §§ 9501-9507.)

the borrower's bankruptcy proceedings which stayed the foreclosure proceedings.

During the substantial period before the lender can acquire the property, circumstances can change so as to render unnecessary the lender's resort to the property or to moot any issue about a prior overappraisal of the property. The borrower may cure the default and reinstate the loan and trust obligations. The borrower may find refinancing which would pay off the entire amount of the obligation. The real estate market or the value of the particular property might go up. Therefore, the borrower's default, alone, is not sufficient to show that the lender has suffered actual damage from a negligent appraisal overvaluing the property. Whether the lender will actually suffer from the erroneous appraisal depends on the value of the property when the lender acquires it, for it is then that the lender resorts to the security.

The lender should not be deemed to have a cause of action as soon as the borrower defaults. This could lead to a multiplicity of unnecessary lawsuits against appraisers. It is not unusual for borrowers in financial difficulty to default, to cure the first default, and then to default again. If the cause of action arose upon default, the lender might be required to inefficiently file multiple actions corresponding to each default.

Moreover, what would be the status of the first suit, once that default was cured and the loan reinstated as provided by Civil Code section 2924c?[4] At oral argument, Trout suggested the first suit must be dismissed and that such dismissal might constitute a bar to any new action against the appraiser. The suggestion of a bar is unjust to a lender subsequently injured when the borrower defaults again but fails to reinstate. The lender should not be barred from recovery against a negligent appraiser simply because an earlier default was cured and the loan and trust obligations reinstated.

These anomalies are avoided by holding that the cause of action does not accrue until the lender acquires the property by foreclosure or power of sale and thereby resorts to the security. This is an unalterable and definitive event which will fairly fix the starting point for commencing the running of the statute of limitations. In the context of secured real estate lending, where borrowers are afforded extensive opportunities to cure defaults before losing

---

[4]Civil Code section 2924c, subdivision (a)(1) provides for reinstatement at any time five days prior to the date of sale upon payment of all principal, interest, taxes, assessments, insurance premiums, or advances that are in default and all reasonable costs and expenses incurred in enforcing the terms of the promissory note. If the borrower tenders all sums due on default, the lender is obligated by law to reinstate the obligation and deed of trust. As a consequence of this provision, reinstatement would vitiate any claim for damages.

title to the property, causes of action should not be born, aborted, or resurrected according to the oscillation, to and fro, of defaults and reinstatements. To conclude otherwise would produce repetitive filings and dismissals at great expense and no benefit to lenders or appraisers.

We conclude that until Slavin actually acquired the property by foreclosure, Trout's negligent appraisal caused only speculative harm or threat of future harm. (*Budd* v. *Nixen, supra,* 6 Cal.3d at p. 200.) Since the foreclosure sale did not occur until October 7, 1988, less than two years prior to the filing of Slavin's complaint on August 3, 1990, the complaint was not barred by the statute of limitations.

The judgment is reversed. Costs on appeal are awarded to Slavin.

Woods (A. M.), P. J., and Rappe, J.,* concurred.

A petition for a rehearing was denied October 15, 1993, and respondent's petition for review by the Supreme Court was denied January 13, 1994. Panelli, J., was of the opinion that the petition should be granted.

---

*Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.