704 A.2d 97

VISION MORTGAGE CORPORATION, INC., PLAINTIFF-APPEL-
LANT, v. PATRICIA J. CHIAPPERINI, INC., AND PATRICIA
J. CHIAPPERINI, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 13, 1997—Decided January 8, 1998.

D'Annunzio, J.A.D., dissented and filed opinion.

Before Judges SHEBELL, D'ANNUNZIO and COBURN.

*Christine D. Petruzzell* argued the cause for appellant (*Wilentz, Goldman and Spitzer*, attorneys; *Ms. Petruzzell* and *Georgia C. Haglund*, on the brief).

*Jeffrey S. Intravatola* argued the cause for respondents (*Hoagland, Longo, Moran, Dunst and Doukas*, attorneys; *Mr. Intravatola*, on the brief).

The opinion of the court was delivered by

COBURN, J.A.D.

This is an action by plaintiff mortgage company against a firm and its principal, collectively referred to as defendant, engaged in the business of providing appraisals of the value of real property. Plaintiff appeals from a summary judgment entered on the ground that the entire controversy doctrine precludes this claim, and on the alternative ground that the claim is barred by the six-year statute of limitations. We reverse and remand for trial.

There is no dispute regarding any material fact. In 1988, plaintiff retained defendant to appraise certain property in Jersey City in connection with a mortgage loan application filed with the plaintiff by Edwin Nazario. Defendant appraised the property at a value of $280,000, and on the strength of that appraisal plaintiff loaned Nazario $182,000. The loan closed in 1988. Nazario defaulted in 1989. In 1990, plaintiff commenced an action to foreclose Nazario's mortgage and judgment was entered in that action in 1992.

Plaintiff was aware as early as 1991 that defendant's appraisal may have been defective. Plaintiff received an appraisal from Ebert Appraisal Company dated December 10, 1991, indicating that the property's value was $209,000, *i.e.,* $71,000 less than

defendant had reported it in 1988. An Ebert appraisal dated June 15, 1993 reported the value as $192,000, and another Ebert appraisal on February 14, 1994, reported it as $132,500. An appraisal by the Smith firm dated September 16, 1994 indicated the appraised value to be $75,000. In September 1994, plaintiff, through its assignee, acquired possession of the Nazario property.

The trial court believed the entire controversy doctrine was implicated in this case because of another transaction between the parties relating to Trevor Willis. In 1989, Willis applied to plaintiff for a mortgage loan on property in Montclair. Plaintiff retained defendant to appraise the Montclair property and defendant valued it at $511,000. In reliance on this appraisal, plaintiff approved and closed a loan to Willis in the amount of $367,700 in July 1989. By June 1991, the Willis loan was in default.

On July 29, 1992, plaintiff sued defendant, alleging negligence with regard to the Willis appraisal. In its complaint in the Willis action, plaintiff alleged that the value of the Willis property at the time of the appraisal was no higher than $290,000. Thus, the action against defendant arising out of the Willis appraisal was pending at the time plaintiff was aware of facts suggesting that the Nazario appraisal was incorrect.

On June 13, 1995, ten months after plaintiff took possession of the Nazario property, plaintiff and defendant settled the action pertaining to the Willis appraisal. Approximately ten weeks later, on August 22, 1995, plaintiff commenced the present action against defendant arising out of the Nazario appraisal.

I

The entire controversy doctrine evolved through common law to encompass a mandatory rule "for the joinder of virtually all causes, claims, and defenses relating to a controversy between the parties engaged in litigation." *Cogdell v. Hospital Ctr.*, 116 *N.J.* 7, 16, 560 *A.*2d 1169 (1989). The failure to adhere to the requirements of mandatory joinder precludes a party in a subsequent lawsuit from asserting a new and independent action for damages.

Thus, the general rule in New Jersey is "a defendant must assert all matters which will defeat a claim against him and a plaintiff must seek complete relief for vindication of the wrong he charges." *Applestein v. United Bd. & Carton Corp.*, 35 *N.J.* 343, 356, 173 *A.*2d 225 (1961); *Mori v. Hartz Mountain Dev. Corp.*, 193 *N.J.Super.* 47, 53, 472 *A.*2d 150 (App.Div.1983); *see Falcone v. Middlesex County Med. Soc'y*, 47 *N.J.* 92, 93, 219 *A.*2d 505 (1966); *Massari v. Einsiedler*, 6 *N.J.* 303, 78 *A.*2d 572 (1951).

■ "[T]he entire controversy doctrine applies not only to matters actually litigated, but to all aspects of a controversy that *might* have been thus litigated and determined." *Mori, supra*, 193 *N.J.Super.* at 56, 472 *A.*2d 150. Consequently,

> the application of the doctrine requires that a party who has elected to hold back from the first proceeding a related component of the controversy be barred from thereafter raising it in a subsequent proceeding. It is only that bar which can effectively prevent the evil of " * * * piecemeal litigation of fragments of a single controversy."
>
> [*Wm. Blanchard Co. v. Beach Concrete Co.*, 150 *N.J.Super.* 277, 292–93, 375 *A.*2d 675 (App.Div.) (citations omitted), *certif. denied*, 75 *N.J.* 528, 384 *A.*2d 507 (1977).]

The doctrine is now codified in *R.* 4:30A, which provides:

> Non-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by *R.* 4:64–5 (foreclosure actions) and *R.* 4:67–4(a)(leave required for counterclaims or cross-claims in summary actions).

*R.* 4:27–1 provides in pertinent part, "Subject to *R.* 4:30A (entire controversy doctrine), the plaintiff in the complaint . . . may join . . . as independent . . . claims . . . as many claims, either legal or equitable or both, as he or she may have against an opposing party." The rule is clearly permissive unless the entire controversy doctrine dictates otherwise. The entire controversy doctrine is not implicated here because there is no evidence that the matters in the two controversies were part of a related series of transactions.

In *Wm. Blanchard Co. v. Beach Concrete Co., supra*, we said, the "application of the doctrine requires that a party who has

elected to hold back from the first proceeding *a related component* of the controversy be barred from thereafter raising it in a subsequent proceeding." 150 *N.J.Super.* at 292–93, 375 *A.*2d 675 (emphasis added). We also said:

> [A]n evaluation must be made of each potential component of a particular controversy to determine the likely consequences of the omission of that component from the action and its reservation for litigation another day. If those consequences are likely to mean that the litigants in the action as framed will, after final judgment therein is entered, be likely to have to engage in additional litigation in order to conclusively dispose of their respective bundle of rights and liabilities which derive from a single transaction or related series of transactions, then the omitted component must be regarded as constituting an element of the minimum mandatory unit of litigation. That result must obtain whether or not that component constitutes either an independent cause of action by technical common-law definition or an independent claim which, in the abstract, is separately adjudicable.
>
> [*Id.* at 293–94, 375 *A.*2d 675.]

We applied the doctrine in *Wm. Blanchard Co.* because the litigation concerned a "single transaction—a transaction whose narrowest scope includes the respective performance by each of the present litigants of their respective contractual undertakings *vis-a-vis* this building project...." *Id.* at 294, 375 *A.*2d 675. In short, joinder was required because all of the claims related to the same project. In the instant case, there was no relationship between the two appraisals. Each involved a separate "project." The only relationship was that the parties were involved in both projects. In *Wm. Blanchard Co.*, it was not the relationship of the parties to each other which implicated the doctrine, it was their relationship, or the relationship of their claims, to the "project" which called for application of the doctrine.

In *Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank*, 163 *N.J.Super.* 463, 395 *A.*2d 222 (App.Div.1978), *certif. denied*, 79 *N.J.* 488, 401 *A.*2d 243 (1979), we applied the entire controversy doctrine to bar claims in the second litigation because "the bank's claims in the prior suit, upon which judgment was recovered, and plaintiffs' claims in the present litigation, do derive from the same transaction or series of transactions—*the underlying alleged agreements to extend credit.*" *Id.* at 498, 395 *A.*2d 222 (emphasis added). By contrast, in the instant litigation

there was no evidence of an underlying agreement which linked the two appraisals.

In *Mori v. Hartz Mountain Dev. Corp., supra*, we held that an action for rent should have been joined with an earlier partition action because both claims related to the same property and to the parties' rights therein. 193 *N.J.Super.* at 55–57, 472 *A.2d* 150.

In *Boardwalk Regency Corp. v. Square Brighton Corp.*, 288 *N.J.Super.* 494, 672 *A.2d* 1185 (App.Div.1996), we again applied the doctrine to bar a subsequent claim because both actions related to the parties' interests in the same property.

None of the these cases support application of the doctrine to the instant litigation. Although defendant was performing the same type of services with respect to each of the properties, that similarity does not make the transactions related. In fact, they had nothing in common. They did not relate to each other and they did not relate to any overall agreement. Therefore, the entire controversy doctrine did not require dismissal of the second action.

## II

█ The trial court also held that the action should be dismissed on the ground that the statute of limitations had run. We disagree.

The applicable statute of limitations is six years. *N.J.S.A.* 2A:14–1. Defendant contends that April 1, 1989, the date of default on the loan, is the date on which the statute of limitations began to run. Plaintiff's primary position is that the action did not accrue until the foreclosure sale. Plaintiff contends, in the alternative, that at the earliest the statute began to run in December 1991 when it received the first post-default appraisal indicating that the property was then worth substantially less than the amount indicated by defendants. If defendant is correct, the statute of limitations expired approximately four months before the action was instituted. Otherwise, the action would be timely.

■ A professional malpractice claim, such as the one involved here, accrues "when: (1) the claimant suffers an injury or damages; and (2) the claimant knows or should know that its injury is attributable to the professional negligent advice." *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla,* 142 *N.J.* 280, 296, 662 *A.*2d 509 (1995). The defendant's argument focuses exclusively on the second prong of the accrual test. Thus, the claim is that at the time of the default on the loan, April 1, 1989, the plaintiff would have known facts indicating "a basis for an actionable claim" if it had exercised "reasonable diligence and intelligence." *Lopez v. Swyer,* 62 *N.J.* 267, 272, 300 *A.*2d 563 (1973). For the purposes of this opinion, we will assume the validity of that argument. However, that is not enough to vindicate defendant's position because it ignores the first prong of the accrual test, the requirement that the claimant has suffered damages.

■ We hold that an action by a mortgagee against its appraiser for professional malpractice does not accrue until the loss, if any, of the mortgagee is established by resort to the security through foreclosure or otherwise. *Slavin v. Trout,* 18 *Cal.App.*4th 1536, 23 *Cal.Rptr.*2d 219 (1993).

In *Slavin, supra,* the action was brought by a secured lender against a real estate appraiser who was alleged to have overvalued property on which a loan was extended. This case supports plaintiff's contention that the statute of limitations in an action of this kind does not begin to run until the bank "acquired the property at a foreclosure sale following the borrower's default." 23 *Cal.Rptr.*2d at 220. The court took as its basic premise the concept that a secured lender "does not suffer actual and appreciable harm from reliance on an overvalued appraisal until 'resort to the [inadequate] security.'" *Id.* 23 *Cal.Rptr.*2d at 222. It specifically rejected the suggestion that the date of default on the loan is the point in time when the statute of limitations commences to run. *Id.* 23 *Cal.Rptr.*2d at 222–23. It said, "The lender's resort to the property does not occur until later and it is at that point the

lenders suffers appreciable harm." *Id.* 23 *Cal.Rptr.*2d at 223.  In further explanation of this approach, the court said:

> During the substantial period before the lender can acquire the property, circumstances can change so as to render unnecessary the lender's resort to the property or to moot any issue about a prior overappraisal of the property. The borrower may cure the default and reinstate the loan and trust obligations. The borrower may find refinancing which would pay off the entire amount of the obligation. The real estate market or the value of the particular property might go up. Therefore the borrower's default, alone, is not sufficient to show that the lender has suffered actual damage from a negligent appraisal overvaluing the property. Whether the lender will actually suffer from the erroneous appraisal depends on the value of the property when the lender acquires it, for it is then that the lender resorts to the security.
>
> The lender should not be deemed to have a cause of action as soon as the borrower defaults. This could lead to a multiplicity of unnecessary lawsuits against appraisers. It is not unusual for borrowers in financial difficulty to default, to cure the first default, and then to default again. If the cause of action arose upon default, the lender might be required to inefficiently file multiple actions corresponding to each default.
>
> Moreover, what would be the status of the first suit, once that default was cured and the loan reinstated as provided by Civil Code section 2924c? At oral argument, Trout suggested the first suit must be dismissed and that such dismissal might constitute a bar to any new action against the appraiser. The suggestion of a bar is unjust to a lender subsequently injured when the borrower defaults again but fails to reinstate. The lender should not be barred from recovery against a negligent appraiser simply because an earlier default was cured and the loan and trust obligations reinstated.
>
> These anomalies are avoided by holding that the cause of action does not accrue until the lender acquires the property by foreclosure or power of sale and thereby resorts to the security. This is an unalterable and definitive event which will fairly fix the starting point for commencing the running of the statute of limitations. In the context of secured real estate lending, where borrowers are afforded extensive opportunities to cure defaults before losing title to the property, causes of action should not be born, aborted, or resurrected according to the oscillation, to and fro, of defaults and reinstatements. To conclude otherwise would produced [sic] repetitive filings and dismissals at great expense and no benefit to lenders or appraisers.
>
> [*Id.* 23 *Cal.Rptr.*2d at 223–24 (footnote omitted).]

The position taken by the defendant is supported by an earlier California intermediate appellate court decision. *Johnson v. Simonelli*, 231 *Cal.App.*3d 105, 282 *Cal.Rptr.* 205 (1991). That case held the statute of limitations would begin to run from the time of default on the loan. However, the *Slavin* court rejected *Johnson* on this point, and thereafter the California Supreme Court specifi-

cally disapproved of *Johnson*'s holding. *ITT Small Business Finance Corp. v. Niles,* 9 *Cal.*4th 245, 36 *Cal.Rptr.*2d 552, 556, 885 *P.*2d 965, 969 (1994). Since the reasoning of *Slavin* appears sound, and since reliable contrary authority has neither been provided by the parties nor revealed by our own research, we will follow it. Therefore, the statute of limitations does not bar plaintiff's action.

Reversed and remanded for trial.

D'ANNUNZIO, J.A.D., (dissenting).

I would affirm the judgment for defendant on the ground that under the entire controversy doctrine plaintiff should have combined the claim based on the Nazario appraisal in its action on the Willis appraisal. I have nothing to add to the majority's lucid and concise statement of uncontroverted material facts.

The entire controversy doctrine is codified in *R.* 4:30A. This rule "advances the purpose of *R.* 4:5–1." *Olds v. Donnelly,* 150 *N.J.* 424, 434, 696 *A.*2d 633 (1997). *R.* 4:5–1(b)(2) requires a party's first pleading to contain "a certification as to whether the matter in controversy is the subject of any other action pending in any court or of a pending arbitration proceeding, *or whether any other action or arbitration proceeding is contemplated* (emphasis added)." It also requires each party "during the course of litigation to file and serve on all other parties and with the court an amended certification if there is a change in the facts stated in the original certification." Further, "the court may compel the joinder of parties in appropriate circumstances, either upon its own motion or that of a party." *Ibid.*

The purposes of the doctrine are several—judicial economy, efficiency, avoidance of waste, the reduction of delay, fundamental fairness to parties, avoidance of piecemeal litigation and harassment of parties—but they are often reduced to two when referring to the overriding policy behind the doctrine: fairness to parties and judicial economy. *Cogdell v. Hospital Ctr.,* 116 *N.J.* 7, 15, 17, 560 *A.*2d 1169 (1989); *see Joel v. Morrocco,* 147 *N.J.* 546, 548, 688

A.2d 1036 (1997). In *Cogdell, supra,* the Court extended the doctrine to require the mandatory joinder of all *parties* "who have a material interest in the controversy." 116 *N.J.* at 26, 560 *A.2d* 1169.

In the present case, plaintiff contends that the entire controversy doctrine does not bar this action because it is "unrelated" to the prior action involving the Willis appraisal. I disagree. The Supreme Court observed in *DiTrolio v. Antiles,* 142 *N.J.* 253, 662 *A.2d* 494 (1995), that "[i]n determining whether successive claims constitute one controversy for purposes of the doctrine, the central consideration is whether the claims ... arose from related facts or the same transaction or series of transactions." *Id.* at 267, 662 *A.2d* 494.

We applied the concept of a "related series of transactions," *ibid.,* in *Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank,* 163 *N.J.Super.* 463, 395 *A.2d* 222 (App.Div. 1978), *certif. denied,* 79 *N.J.* 488, 401 *A.2d* 243 (1979), a case cited with approval in *DiTrolio, supra,* 142 *N.J.* at 267, 662 *A.2d* 494. In *Malaker,* we held that plaintiff's claim against the bank for its alleged breach of a loan commitment should have been raised by plaintiff in an earlier action by the bank on an overdue note. 163 *N.J.Super.* at 491–500, 395 *A.2d* 222. There we articulated the following test:

> Consequently, although we agree with the trial judge's characterization of certain of plaintiffs' claims as being separate and independent ones, capable of separate adjudication, we disagree that such characterization is dispositive of or even bears on whether the claims were barred by the prior state court judgment. The essential inquiry is whether the claims here asserted derive from a single transaction or a series of related transactions, a portion of which was disposed of by final judgment in the earlier lawsuit. If they have such derivation, they are barred.
>
> [*Id.* at 497, 395 A.2d 222.]

We had formulated a similar standard in *William Blanchard Co. v. Beach Concrete Co.,* 150 *N.J.Super.* 277, 375 *A.2d* 675 (App.Div.), *certif. denied,* 75 *N.J.* 528, 384 *A.2d* 507 (1977):

> [The entire controversy doctrine] must be applied empirically. That is to say, an evaluation must be made of each potential component of a particular controversy to determine the likely consequences of the omission of that component from the action and its reservation for litigation another day. If those consequences are

likely to mean that the litigants in the action as framed will, after final judgment therein is entered, be likely to have to engage in additional litigation in order to conclusively dispose of their respective bundles of rights and liabilities which derive from a single transaction *or related series of transactions,* then the omitted component must be regarded as constituting an element of the minimum mandatory unit of litigation. That result must obtain whether or not that component constitutes either an independent cause of action by technical common-law definition or an independent claim which, in the abstract, is separately adjudicable.
[150 *N.J.Super.* at 293–94, 375 *A.*2d 675 (emphasis added).]

*See also Tevis v. Tevis,* 79 *N.J.* 422, 434, 400 *A.*2d 1189 (1979) (holding that marital tort, an assault, should have been asserted in the prior divorce action); *Boardwalk Regency Corp. v. Square Brighton Corp.,* 288 *N.J.Super.* 494, 500–01, 672 *A.*2d 1185 (App. Div.1996) (determining that action by lessee against sublessee for late charges should have been joined in prior litigation by third party against city to compel condemnation of part of leased premises, an action in which lessee and sublessee had intervened); *Mori v. Hartz Mountain Dev. Corp.,* 193 *N.J.Super.* 47, 55–57, 472 *A.*2d 150 (App.Div.1983) (concluding that action for rent against former cotenant as assignee of lease should have been asserted in earlier partition action).

I agree with Judge Pressler's observation in *William Blanchard Co., supra,* that "the task of definitionally circumscribing the outer limits of a given controversy for purposes of application of the doctrine is inordinately difficult." 150 *N.J.Super.* at 293, 375 *A.*2d 675. *See e.g., Joel v. Morrocco, supra; Illiano v. Seaview Orthopedics,* 299 *N.J.Super.* 99, 690 *A.*2d 662 (App.Div.1997). We must, therefore, evaluate the impact of plaintiff's reservation of the claim regarding the Nazario appraisal in terms of the purposes of the entire controversy doctrine.

The doctrine seeks to promote judicial economy and efficiency. Plaintiff's failure to assert the Nazario claim in the Willis action undercuts those goals. To prevail on either claim plaintiff would have had to establish the standard of performance in the appraisal business, defendant's deviation from that standard, and damage to plaintiff as a proximate result of any deviation.

The first element, the standard of performance will be the same in both cases. By splitting the claims, plaintiff made it necessary

to establish the standard twice, thereby duplicating effort and court time. It is likely that a separate trial in each case would include duplicative evidence about the nature and characteristics of the mortgage loan business and the appraisal business. Such evidence would be necessary to inform fully the trier of fact regarding the standard of performance, breach of the standard, proximate cause and damages. Each case would, of course, involve evidence peculiar to it regarding specific deviation from the standard of performance and the amount of damages.

Fairness to the parties is also an objective of the doctrine. I am persuaded that there is great potential for mischief in presenting and settling one claim while holding a second identical claim in reserve. Moreover, regarding judicial efficiency, it would have been reasonable to expect that if plaintiff had asserted both claims in the same action, a settlement would have resolved both claims.

Although each appraisal involved a discrete mortgage transaction, each was a component part of a series of transactions involving plaintiff and defendant. *Mortgagelinq Corp. v. Commonwealth Land Title, Ins., Co.,* 142 *N.J.* 336, 662 *A.*2d 536 (1995) involved a failure to join certain defendants in an earlier action in Pennsylvania, in violation of the doctrine. Although joinder of claims was not an issue, the complaint alleged mortgage fraud involving twenty-four separate real estate transactions which were properly combined in one action. It serves, therefore, as an exemplar of how plaintiff should have proceeded in the present case.

In light of the trial court's correct application of the entire controversy doctrine in granting judgment for defendant, it is unnecessary to consider the court's ruling regarding the thorny issue of when the cause of action had accrued under the six-year[1] statute of limitations.

---

[1] The California limitations period is only two years. *Slavin v. Trout,* 18 *Cal.App.*4th 1536, 23 *Cal.Rptr.*2d 219, 220 (1993). California's short limitations

period may explain the *Slavin* court's core concern: that two years from default may not be sufficiently long for a mortgagee to determine whether it has suffered actual damages from an inadequate appraisal.