IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

LLANO FINANCING GROUP, LLC,

       Appellant,

v.

THEODORE F. PETIT,

       Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING AND DISPOSITION THEREOF IF FILED

CASE NO. 1D16-3168

Opinion filed September 27, 2017.

An appeal from the Circuit Court for Duval County.
Tatiana Salvador, Judge.

Robert J. Hauser of Pankauski Hauser PLLC, West Palm Beach, for Appellant.

Roberto M. Ureta of Quintarios, Prieto, Wood & Boyer, PA, Miami, for Appellee.

WINSOR, J.

We must decide when the statute of limitations commences on a lender's negligent appraisal claim. We hold that when a lender funds a loan relying on a faulty appraisal, claims based on that faulty appraisal and subject to section 95.11(3)'s four-year statute of limitations accrue immediately. We therefore affirm the trial court's order dismissing appellant's claims.

I.

Theodore Petit was an appraiser. His job was to provide real estate appraisals to lenders, who relied on appraisals in approving mortgage loans.[1] Way back in 2004, Petit prepared an appraisal for a home on Jacksonville's Autumn River Road. He valued that home at $216,000, and SunTrust Mortgage relied on that appraisal when it loaned $172,000 for the home's purchase. That was the end of that, at least until nearly ten years later.

In 2014, Llano Financing Group, LLC ("Llano" for short) discovered it had been harmed by Petit's 2004 appraisal. In the decade between the appraisal and this discovery, there were a few pertinent events. First, SunTrust sold the loan to an investment trust, which, through a series of transactions, effectively transferred to Llano claims related to the loan. Second, the borrower defaulted. Third, the investment trust filed a foreclosure action in 2011 and acquired a certificate of title in 2014. And finally, in 2014, it sold the property at a loss, then first realizing that it had suffered harm.

---

[1] We gather our facts from the amended complaint. Because we review the trial court's order granting a motion to dismiss, we must accept all the well-pleaded facts as true. *Locker v. United Pharm. Grp.*, 46 So. 3d 1126, 1128 (Fla. 1st DCA 2010).

In 2015, Llano sued Petit, alleging that Petit's appraisal undervalued the property, that SunTrust never would have made the loan but for the bad appraisal, that the investment trust never would have bought the loan but for the bad appraisal, and that Petit was therefore liable for any loss the investment trust suffered. Llano asserted claims of professional negligence, negligent misrepresentation, and false information negligently supplied for the guidance of others. Petit moved to dismiss, arguing that the statute of limitations precluded any such claims. The trial court granted the motion. This is Llano's appeal.

## II.

The relevant statute of limitations is four years. *See* § 95.11(3)(a), Fla. Stat. (2004) (providing four-year limitation for "[a]n action founded on negligence"). The separate two-year limitations period for most professional malpractice actions is inapplicable because it is "limited to persons in privity with the professional." *Id.* § 95.11(4)(a). We reject Llano's argument that the investment trust and appraiser were in privity as successors to SunTrust Mortgage, *see Baskerville-Donovan Eng'rs, Inc. v. Pensacola Exec. House Condo. Ass'n*, 581 So. 2d 1301, 1303 (Fla. 1991) (holding that "'privity' as used in section 95.11(4)(b) means "direct contractual privity"), and we conclude that the four-year period applied to each of Llano's claims. The question is when that four-year period began. If it began when

3

Petit provided the appraisal or when SunTrust funded the loan, Llano's suit is far too late. If it began at the foreclosure sale or later, Llano's suit beats the deadline.

The legal starting point for a limitations period is the point "when the last element of the cause of action occurs." *Davis v. Monahan*, 832 So. 2d 708, 709 (Fla. 2002); *see also* § 95.031(1), Fla. Stat. (2004). Llano contends the last element of its causes of action—damages—did not exist until the property was sold at a loss, some ten years after the appraisal. There is some force to this argument; after all, if the borrower had repaid his loan as promised, the investment trust might have had no complaints about the appraisal—even if it had grossly undervalued the property. But although some courts have adopted Llano's approach, *see, e.g.*, *Vision Mortg. Corp., Inc. v. Patricia J. Chiapperini, Inc.*, 704 A.2d 97, 100 (N.J. Super. Ct. App. Div. 1998), *aff'd*, 722 A.2d 527 (N.J. 1999), Florida law compels a different result.

As soon as the original home loan closed, SunTrust owned a loan secured by the home Petit appraised. The loan and mortgage had a value, and that value was "obviously based largely on the value of the real property [providing] the security for the note." *Kellermeyer v. Miller*, 427 So. 2d 343, 346 (Fla. 1st DCA 1983). If SunTrust made the loan relying on an undervalued appraisal, it was harmed when the loan closed: SunTrust essentially spent more on its new assets (the note and

4

mortgage) than it should have.[2] "This diminution in value, if proximately caused by the alleged negligence . . ., supplied the damage element essential to the accrual of a cause of action." *Id.*; *accord TCF Nat'l Bank v. Mkt. Intelligence, Inc.,* 812 F.3d 701, 710 (8th Cir. 2016) ("[F]rom the moment that TCF made a mortgage loan that it would not have made but for the inflated real estate value provided by Market, TCF held debts that were under secured.").

It may well be that when the loan funded—when the cause of action first accrued—the precise quantity of damages could not yet be determined. But that doesn't matter because the general rule "is that where an injury, although slight, is sustained in consequence of the wrongful act of another, and the law affords a remedy therefor, the statute of limitations attaches at once." *Kellermeyer*, 427 So. 2d at 346 (*quoting City of Miami v. Brooks*, 70 So. 2d 306, 308 (Fla. 1954)).[3] There

---

[2] We recognize that in some instances, even a significant appraisal error may not affect the value of a mortgage or note. For example, if a $100,000 note is secured by a $2 million property that was negligently appraised at $5 million, a lender's security—and therefore the value of the note—might not be meaningfully undermined. But those are not the facts alleged here.

[3] Although it does not affect our decision, we note that the full extent of the damages perhaps could have been determined years ago. SunTrust sold its interest shortly after closing, as originating lenders frequently do. To the extent any negligent appraisal reduced the market value of the note and mortgage, that could have been determined then. Consider this example: An appraiser negligently appraises a $100,000 house at $150,000. A buyer reasonably relies on that negligent appraisal and buys the $100,000 house for $150,000. The buyer's damages ($50,000) are

5

was an injury (again accepting the amended complaint's factual allegations) when SunTrust funded the loan based on a faulty appraisal. Nobody had to wait for a foreclosure to address that injury. *Cf. TCF Nat'l Bank,* 812 F.3d at 710 (noting that "[i]f, for limitation purposes, 'some' damage does not occur until foreclosure, a lender could be prevented from bringing suit for decades after realizing a value estimation it received was performed negligently").

This situation is unlike those in the two Florida Supreme Court cases on which Llano principally relies. In *Peat, Marwick, Mitchell and Company v. Lane*, the court held that the limitations period for an accounting malpractice claim began not when an accountant gave bad advice but when the tax court entered judgment showing the advice was bad. 565 So. 2d 1323, 1325-26 (Fla. 1990). Until the underlying tax-court proceeding was complete, there was no action for malpractice. *Id.* at 1326. In fact, "[u]ntil the tax court determination, both the Lanes and Peat Marwick believed that the accounting advice was correct." *Id.* It wasn't that damages were uncertain; it was that the parties had to wait for the tax-court ruling to determine whether the accountant was negligent in the first place. Similarly, in *Blumberg v. USAA Casualty*

_____

easily determined immediately after the sale. Those damages would be the same whether the buyer promptly sold the home at a loss, lived in it forever, or sold it for $200,000 after decades of market appreciation.

6

*Insurance Company*, a homeowner's claim alleging an insurance agent negligently failed to secure coverage did not accrue until the underlying dispute with the insurer was over. 790 So. 2d 1061, 1065 (Fla. 2001) (applying *Peat, Marwick*). The agent maintained that there *was* coverage, so until the court determined otherwise, there was no cause of action. *Id.* Here, on the other hand, a court did not need to wait on any other litigation to discern whether Petit undervalued the home. That was as easily discernable in 2004 (indeed, probably more easily discernable) than in 2014. Accordingly, neither *Peat, Marwick* nor *Blumberg* helps Petit here. *See Peat, Marwick*, 565 So. 2d at 1327 (finding *Kellermeyer* distinguishable).

Finally, we address Llano's argument that starting the clock at the time of funding is bad public policy. Llano suggests that our holding "would encourage the filing of premature, unripe, and unnecessary lawsuits against appraisers" and "will inflexibly shield truly negligent appraisers" from claims. But our job is not to say what the law should be—another branch of government has that responsibility. The Legislature surely balanced various considerations in enacting various limitations periods for various claims. *See Major League Baseball v. Morsani*, 790 So. 2d 1071, 1074 (Fla. 2001) ("[F]ixed limitations on actions are predicated on public policy and are a product of modern legislative, rather than judicial, processes."); *see also generally* Ch. 95, Fla. Stat. (2004) (establishing limitations for periods ranging from

7

one year to twenty). Llano's preferred rule would leave appraisers potentially on the hook for decades (imagine a foreclosure suit twenty-nine years into a thirty-year mortgage), and the Legislature might find such a rule inconsistent with the general purpose behind limitations periods. *Major League Baseball*, 790 So. 2d at 1075 (noting that statutes of limitations "'afford parties needed protection against the necessity of defending claims which, because of their antiquity, would place the defendant at a grave disadvantage'" (quoting *Nardone v. Reynolds*, 333 So. 2d 25 (Fla. 1976))). At any rate, if the Legislature seeks a new rule, it can enact one.

The statute of limitations began to run when SunTrust relied on the appraisal to fund the loan. That was in 2004, so Llano's 2015 suit was far too late. The trial court correctly dismissed it.

AFFIRMED.

MAKAR, J., CONCURS; LEWIS, J., CONCURS IN RESULT.