# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2761-24

BRIAN VASSEL,

      Plaintiff-Appellant,

v.

DEANNA DAMATO,
LAUREN O'HALLORAN, and
JILLIAN CARLTON,

      Defendants-Respondents.

_____

      Submitted April 22, 2026 – Decided May 15, 2026

      Before Judges Berdote Byrne and Jablonski.

      On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-3314-24.

      Brian Vassel, self-represented appellant.

      Ronan Tuzzio & Giannone, PA, attorneys for respondents (Robert G. Maglio, of counsel and on the brief).

PER CURIAM

Plaintiff Brian Vassel appeals from the March 14, 2025 order dismissing his complaint with prejudice against defendants Deanna Damato, Lauren O'Halloran, and Jillian Carlton, employees of Community Medical Center (CMC). After careful consideration, we affirm. Because this action arises from the same facts as plaintiff's prior action against CMC, the entire controversy doctrine bars his claims against the individual employees.

I.

On December 21, 2022, plaintiff's minor daughter was admitted to CMC's emergency room in Toms River, where defendants and other hospital staff evaluated her. Following the evaluation, staff contacted the Division of Child Protection and Permanency (DCPP) to report suspected child abuse. After DCPP responded, CMC discharged plaintiff's daughter to her aunts, who transported her to the home of her paternal grandparents. Plaintiff alleges he was not permitted to leave the hospital with his daughter and was escorted out of the hospital by security staff.

On May 31, 2023, prior to filing the complaint at issue in this appeal, plaintiff filed a complaint against CMC. The complaint alleged CMC staff had "endangered the welfare of the child," "impeded parental custody," falsely imprisoned his daughter, and facilitated "first degree[] kidnapping" by releasing

his daughter to individuals without custodial rights. The complaint further alleged CMC staff "falsified documents" to conceal their actions. Plaintiff sought $9,432,950 in damages for emotional distress and trauma to his daughter, her parents, and grandparents.

CMC moved for summary judgment, and a hearing took place on December 6, 2024. At the hearing, the parties disputed what, if anything, DCPP directed CMC staff to do regarding plaintiff's daughter's discharge. CMC argued DCPP had established a safety plan directing she not be alone with her father until DCPP could come to the grandparents' home to complete its investigation, and she was to be discharged to the grandparents' home. CMC pointed to notations in the emergency department chart, which documented multiple conversations with DCPP and the safety plan. Plaintiff contended DCPP never directed CMC staff to release his daughter to anyone and the staff acted on their own authority in doing so. In support, plaintiff submitted an email from DCPP to him, which stated: "Upon review, there was no documentation to support [DCPP] taking custody, ordering custody, or giving custody of your daughter to anyone."

The court dismissed the complaint with prejudice, reasoning the DCPP email did not raise a material issue of fact as to whether DCPP had established

A-2761-24

a safety plan. The court explained the email addressed only "custody," which it characterized as a legal term of art, and the unrefuted evidence showed CMC had been instructed only to ensure the daughter was not left alone with plaintiff pending completion of the investigation. Plaintiff filed a notice of appeal on February 25, 2025. That appeal is currently pending.

Plaintiff filed the present action on December 22, 2024. The complaint arose from the same December 21, 2022 incident at CMC, and alleged defendants, individuals employed by CMC, "were involved in fraudulent actions related to the wrongful removal of [p]laintiff's child from his custody." The complaint characterized defendants' conduct as "kidnapping by deception." Plaintiff sought relief for unlawful interference with parental rights, emotional distress, and violation of the New Jersey Civil Rights Act, N.J.S.A. 10:6-2.

On January 23, 2025, defendants moved to dismiss the complaint in lieu of an answer pursuant to Rule 4:6-2(e) for failure to state a claim upon which relief may be granted, which plaintiff opposed. The trial court granted the motion and dismissed the complaint with prejudice on March 14, 2025, finding the entire controversy doctrine barred the action. The court explained plaintiff was "not allowed to bring cases piecemeal," and he had enough information to

A-2761-24

sue defendants on the same day he filed the complaint against CMC. This appeal followed.

## II.

Our review of a "motion to dismiss for failure to state a claim pursuant to Rule 4:6-2(e)" is de novo. Am. Civ. Liberties Union of N.J. v. Cnty. Prosecutors Ass'n of N.J., 257 N.J. 87, 100 (2024). "We apply the same standard that governs the trial court in that inquiry, affording to the [non-movant] 'every reasonable inference of fact,' and searching the complaint 'in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary.'" Ibid. (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)). "However, 'if the complaint states no claim that supports relief, and discovery will not give rise to such a claim, the action should be dismissed.'" Ibid. (quoting Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 107 (2019)).

"The entire controversy doctrine 'generally requires parties to an action to raise all transactionally related claims in that same action.'" Francavilla v. Absolute Resolutions VI, LLC, 478 N.J. Super. 171, 178 (App. Div. 2024) (quoting Largoza v. FKM Real Est. Holdings, Inc., 474 N.J. Super. 61, 79 (App.

Div. 2022)).  That "mandate encompasses not only matters actually litigated but also other aspects of a controversy that might have been litigated and thereby decided in an earlier action."  Id. at 179 (quoting Higgins v. Thurber, 413 N.J. Super. 1, 12 (App. Div. 2010)).  "Pursuant to Rule 4:30A, '[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine.'"  Ibid.  The doctrine serves "three fundamental purposes:  '(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay.'"  Bank Leumi USA v. Kloss, 243 N.J. 218, 227 (2020) (quoting DiTrolio v. Antiles, 142 N.J. 253, 267 (1995)).

The entire controversy doctrine "does not require commonality of legal issues."  DiTrolio, 142 N.J. at 271.  The primary inquiry concerns whether both actions "arise from related facts or the same transaction or series of transactions."  C.P. v. Governing Body of Jehovah's Witnesses, 477 N.J. Super. 129, 139 (App. Div. 2023) (quoting Dimitrakopoulos, 237 N.J. at 109).  Thus, "[a] plaintiff bringing an action based on two distinct legal theories is required to bring those claims together in one proceeding."  DiTrolio, 142 N.J. at 271.

6

However, the doctrine does not "apply to bar component claims that are unknown, unarisen, or unaccrued at the time of the original action." Archbrook Laguna, LLC v. Marsh, 414 N.J. Super. 97, 105 (App. Div. 2010) (quoting Mystic Isle Dev. Corp. v. Perskie & Nehmad, 142 N.J. 310, 323 (1995)).

We conclude the trial court correctly found the entire controversy doctrine bars the present action. Although plaintiff argues the two cases allege different causes of action, our law is clear: the entire controversy doctrine "does not mandate that successive claims share common legal issues in order for the doctrine to bar a subsequent action." Dimitrakopoulos, 237 N.J. at 109. Instead, the relevant inquiry is whether the separate claims are part of a "single larger controversy because they arise from interrelated facts," ibid., as is evident here. Both complaints stem from the events of December 21, 2022, when CMC staff reported suspected child abuse to DCPP and discharged plaintiff's daughter into the care of her aunts. The two cases are unmistakably interconnected as part of the same controversy.

As the trial court noted, plaintiff had sufficient information to sue these defendants in his first action against CMC. Plaintiff's contention the DCPP email constitutes new evidence unavailable at the time of the first action is

A-2761-24

unavailing, as that email was not only available, but discussed at length in the first action.

Plaintiff also contends the trial court improperly expanded statutory immunity under N.J.S.A. 9:6-8.13 beyond its intended scope, asserting immunity applies only to the act of reporting suspected child abuse and not to subsequent conduct such as physically removing a child from a custodial parent or transferring custody to unauthorized third parties. We decline to address this issue because it stems from plaintiff's action against CMC, and is an argument more appropriately addressed in his ongoing appeal in that action. See Vision Mortg. Corp., Inc. v. Patricia J. Chiapperini, Inc., 307 N.J. Super. 48, 52 (App. Div. 1998) ("[T]he entire controversy doctrine applies not only to matters actually litigated, but to all aspects of a controversy that might have been thus litigated and determined."); Caggiano v. Fontoura, 354 N.J. Super. 111, 125 (App. Div. 2002) ("We have repeatedly held that piecemeal appeals are ordinarily contrary to the fair and expeditious conclusion of litigation."). Indeed, plaintiff's brief in the CMC appeal raises the same argument verbatim. We make no substantive conclusions with respect to the outcome in that appeal.

We briefly address plaintiff's remaining arguments. He contends the trial court failed to make sufficient findings as required by Rule 1:7-4 by declining

to reach the merits through application of the entire controversy doctrine. This argument is without merit. Preclusion of omitted claims is the precise consequence the doctrine imposes. R. 4:30A. Plaintiff also contends the trial court demonstrated bias and prejudgment, depriving him of a fair and impartial hearing. The record provides no basis to question the trial court's impartiality or suggest any departure from neutrality.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

9

A-2761-24