**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1037-18T4

1ST AND MAIN, LLC,

    Plaintiff-Appellant,

v.

PREMIER WEALTH ADVISORS,
LLC, PREMIER WEALTH
ADVISORY, LLC, LIFELONG
INVESTMENTS, LLC, FIRST
ALLIED SECURITIES, INC.,
FIRST ALLIED ADVISORY
SERVICES, INC, HIRO
WAKATSUKI, in his individual
and official capacity, and BRAD
KATZ, in his individual and
official capacity,

    Defendants-Respondents.

_____

Submitted April 30, 2020 – Decided October 27, 2020

Before Judges Suter and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-2623-15.

The McHattie Law Firm, LLC, attorneys for appellant (Christopher J. McHattie and Michael V. Gattoni, on the briefs).

Winget, Spadafora & Schwartzberg, LLP, attorneys for respondents First Allied Securities, Inc. and First Allied Advisory Services, Inc. (David H. Feldstein, on the brief).

Gruber, Colabella, Liuzza & Thompson, attorneys for respondents Lifelong Investments, LLC and Brad Katz (Chris H. Colabella and Racquel G. Hiben, on the brief).

The opinion of the court was delivered by

SUTER, J.A.D.

Plaintiff First and Main, LLC (plaintiff) appeals the September 18, 2018 order that dismissed its amended complaint with prejudice following a jury trial, arguing the trial court committed reversible error by not permitting certain discovery, by granting summary judgment in favor of defendants dismissing many of the counts, and by barring certain documents from use at the trial. We are not persuaded by these arguments and affirm the challenged orders.

## I.

Plaintiff owns a commercial office building in Boonton, New Jersey. Its managing member is Christopher J. McHattie (McHattie). Defendant Premier Wealth Advisors, LLC (PWA) was a tenant at the property where it maintained

an office.  PWA's managing members were defendants Hiro Wakatsuki (Wakatsuki) and Brad Katz (Katz).  They co-founded PWA in 2010, funding it with personal assets and from commissions Wakatsuki obtained from life insurance sales.  PWA was a tenant in the building when it was acquired by plaintiff in 2012.  The lease did not include any personal guaranties by Katz or Wakatsuki.

In November 2013, plaintiff filed a landlord tenant complaint against PWA seeking a judgment of possession for its non-payment of additional rent and late fees.  Plaintiff certified no other parties needed to be added to the litigation.  Relevant here, plaintiff contends the lease permitted occupancy by only "the [t]enant and the employees of the [t]enant," but that PWA was a shell entity and that Katz and Wakatsuki allowed other companies to use the space. Katz resigned as a member of PWA in December 2014, leaving only Wakatsuki as a managing member.

In January 2015, plaintiff and PWA arbitrated the landlord tenant complaint, resulting in an award for plaintiff.  PWA moved out of the premises, wound up its affairs and was officially dissolved as of February 23, 2015.

Plaintiff alleged that Wakatsuki opened defendant Premier Wealth Advisory LLC (PWA2) and Katz re-opened and re-named a dormant company

to become defendant Lifelong Investments, LLC (LI). Plaintiff alleges PWA2 and LI perform the same services as PWA.

The arbitration award—as amended—was confirmed by the Superior Court and in October 2015, a judgment for $93,788.28 was entered against PWA in plaintiff's favor.

In November 2015, plaintiff filed a complaint in the Superior Court against defendants, PWA, PWA2, LI, Wakatsuki and Katz alleging improper dissolution and winding up of PWA, a violation of the Uniform Fraudulent Transfer Act (UFTA), N.J.S.A. 25:2-20 to -34, and unjust enrichment. In the discovery that followed, Katz and Wakatsuki advised that PWA's only assets were the capital contributions they had made to it, and that PWA had not transferred these assets. PWA's bank statements were produced.

Plaintiff amended the complaint in September 2016, to add defendants First Allied Securities, Inc. and First Allied Advisory Services, Inc. (collectively First Allied), and causes of action for piercing the corporate veil and common law fraud.

First Allied Securities, Inc. is registered with the Financial Industry Regulatory Authority, Inc. (FINRA)[1] as a broker-dealer. First Allied Advisory Services, Inc. is a registered investment advisor.

Plaintiff claimed a search of a FINRA website showed both Wakatsuki and Katz were "employed" by First Allied. Also, it contended First Allied Advisory Services, Inc. was operating in New Jersey under the business names PWA2 and LI. The amended complaint alleged the PWA had "accounts receivables, active bank accounts, contract rights, customer/investor lists and other substantial assets." Plaintiff alleged PWA was dissolved to avoid paying debts and its assets transferred to or distributed to Wakatsuki and Katz, rendering it "defunct [and] without assets." It alleged the judgment had not been paid. The amended complaint sought judgment against PWA, PWA2, LI, First Allied, and Katz and Wakatsuki jointly and severally, alleging claims for

---

[1] First Allied described that FINRA "is a private corporation that acts as a self-regulatory organization for all securities brokerage firms doing business in the United States." See Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 183 (2013) (describing FINRA as "an organization 'created through the consolidation of NASD and the member regulation, enforcement and arbitration operations of the New York Stock Exchange' in July 2007").

A-1037-18T4

improper dissolution of PWA, a violation of the UFTA, unjust enrichment, piercing the corporate veil as to PWA, PWA2 and LI, and common law fraud.

Plaintiff served discovery on Wakatsuki and Katz, and thereafter filed a motion to compel responses. Among other issues, plaintiff complained Katz and Wakatsuki would not disclose their customer lists, that these were assets of PWA and that the transfer of this business to another company was an "identifiable badge of fraud."

In December 2016, plaintiff served subpoenas on First Allied seeking discovery. The subpoenas "generally [sought] information concerning compensation paid by First Allied, First Allied's agreements with the other named [d]efendants, customers' identities, any leads/referrals associated with those customers, and quantitative information concerning the trades and transactions of the customers."

Defendants filed motions to quash the subpoenas and First Allied sought a protective order. First Allied also filed a motion to dismiss plaintiff's complaint with prejudice for failure to state a claim. Plaintiff opposed all the motions.

On July 31, 2017, the court denied without prejudice First Allied's motion to dismiss because it was "possible" at this stage of the litigation that First Allied

6

may have "directed or assisted . . . other named defendants in avoiding payment." (The court quashed the subpoenas to First Allied and ordered plaintiff to provide discovery responses to First Allied and Katz. ("[T]here has to be more specificity [in the answers] . . . .")) The court denied plaintiff's motion to compel discovery but did direct Katz and Wakatsuki to produce PWA bank statements and tax returns.

Plaintiff requested reconsideration. Plaintiff alleged the court's orders precluded it from conducting appropriate discovery. Plaintiff claimed the court erred by not requiring Wakatsuki and Katz to produce customer and client lists. And, it argued the court should have ordered the same discovery from First Allied.

Plaintiff's motion for reconsideration was denied on October 20, 2017.[2] The court found plaintiff's "initial request for defendant's customer lists was clearly overbroad, and . . . amounted to . . . a fishing expedition." The court concluded the "clients['] accounts have nothing to do with . . . satisfaction of a judgment . . . ." The court further explained plaintiff had been provided with the information previously ordered (PWA's tax and banking information) but still had not been able to show "any specific instance of the defendants[']

---

[2] We thereafter denied plaintiff's motion for leave to appeal.

A-1037-18T4

fraudulent transfers."  Thus, the court found plaintiff did not show on reconsideration "any reason to show that the [court's] determination was incorrect, that it lacked merit or that it was mistaken, or that there was anything that didn't support that decision."  The court also denied without prejudice motions to dismiss by Katz, Wakatsuki and First Allied.  Plaintiff was provided additional time to respond to discovery.

Wakatsuki testified in his November 2017 deposition that PWA did not have revenue, clients, employees, an operating agreement, or meeting minutes. He testified he and Katz "funded the company personally with personal assets." Insurance commissions were received in his personal name.  He testified:

> [o]ur attempt was to build a business, bring in advisors and eventually create an income stream into [PWA], which never worked out.  We were going to build, and bring in advisors, and take commissions.  And we were able to share commissions with advisors that we recruit in and we never got to that point.  There was no income created.  We dissolved the company.

Katz testified in his November 2017 deposition that PWA did not have assets, revenues, clients, employees contracts, an operating agreement, keep meeting minutes, although it did have meetings for "day-to day strategy, training for the people that we were trying to get to do some business."  He testified "[t]he purpose of [PWA] was to offer financial planning services to other

advisors, who would ultimately have the opportunity to utilize [his] expertise for their clients." He contrasted this with LI. "It's different in that at [LI] I advise my clients." He testified that PWA had a few advisors, who he named, but none of them generated revenue for PWA. Katz left PWA at the end of 2014 because "the business was simply just not working. And it became obvious . . . that it wasn't going to work and [he] should just focus on [LI]."

McHattie was deposed in November 2017. He did not know whether Katz was a member of PWA when it was dissolved. He never specified what assets were transferred from PWA, referring merely to documents that defendants had provided. He also alluded to "comments and statements they made to people at or about the time." McHattie testified PWA was undercapitalized because the income tax return that was produced said it had no income. He was aware that Katz occasionally would pay the rent. He had no evidence to support the claim that Katz commingled personal and corporate assets.

In February 2018, Katz and LI filed a motion for summary judgment as did First Allied. Katz alleged in the statement of material facts that plaintiff was aware Katz and Wakatsuki had a relationship with First Allied because First Allied's name was on the door of PWA's office space. Katz was no longer a member of PWA when the October 2015 judgment was entered. Also, by that

9

time, Wakatsuki had dissolved PWA. Katz alleged McHattie could not provide the factual basis for the allegations in the complaint.

First Allied alleged in its statement of material facts that PWA did not have a relationship with First Allied. First Allied did not sign the lease. Both Wakatsuki and Katz were independent contractors of First Allied who had their own businesses. They both signed independent contractor agreements with First Allied. First Allied explained that "First Allied advisors are required to conduct their securities business through First Allied . . . ." Its role is to supervise the securities activity within the business. First Allied noted that any money First Allied received for an advisor's sales was paid to the advisor directly. First Allied denied any control over PWA. First Allied did not receive any compensation from Wakatsuki's sale of insurance products. It did not have an affiliation with PWA2 or LI. First Allied identified all business names "under which [their] affiliated advisors engaged in securities transactions" based on their understanding of the Security and Exchange Commission's (SEC's) rules. It alleged that none of the discovery showed PWA, PWA2, or LI were the alter egos of First Allied. And, nothing showed defendants transferred assets to First Allied. The statement was supported by certifications from Kevin Keefe, the

President and CEO of First Allied Securities, Inc., and of David Feldstein, Esq., counsel for First Allied.

In March 2018, plaintiff filed a cross-motion for summary judgment. Plaintiff's response to Katz and LI alleged defendants transferred to themselves whatever assets PWA had, which included client lists and office equipment. Plaintiff alleged PWA was a holdover tenant because it would not accept the terms of a new lease and Wakatsuki and Katz represented PWA was a viable business. Plaintiff made a separate but similar response to First Allied's motion.

On April 12, 2018, the trial court granted summary judgment to First Allied and LI, dismissing them from the case. It granted partial summary judgment to Katz, dismissing the UFTA and the improper dissolution claim, but otherwise denying summary judgment. Plaintiff's cross-motion was denied.

The trial court rejected defendants' claims that plaintiff's claims were barred by the entire controversy doctrine because it reasoned that this was an action to collect on a judgment that was separate from the landlord tenant action. The court declined to pierce the corporate veil to assert liability against First Allied because there was no evidence that First Allied "'dominated' PWA" or that First Allied used PWA for fraud, injustice or to violate the law. The "mere connection" between defendants was not adequate to pierce First Allied's "veil."

11

The court found there was no factual basis for any of the other claims against First Allied or LI.

The trial court declined to grant this relief for Katz, however, because giving plaintiff the benefit of reasonable inferences, a fact-finder could find Katz was the alter ego of PWA. And, the court also found there were disputed issues of fact.

The court granted Katz summary judgment on the UFTA claim, dismissing it, because it was not factually supported and was inconsistent with plaintiff's theory of the case. Katz was granted summary judgment on the claim of improper dissolution because he no longer was with PWA when it was dissolved. Plaintiff's cross-motion for summary judgment was denied.

Plaintiff was denied reconsideration on May 25, 2018, because the court found it did not satisfy the reconsideration standard. However, the reconsideration motion by Katz was granted in part. The court dismissed the unjust enrichment claim based on the entire controversy doctrine. It held that "as [p]laintiff has clarified that its claim against Katz is based on the same set of facts, i.e., the rental payments, as the underlying action, it is barred by the entire controversy doctrine." The court concluded that if plaintiff wanted to "hold Katz responsible for his use of the rental property, then that claim should

have been asserted in the underlying action . . . ." Katz also was granted summary judgment dismissing the common law fraud claim because plaintiff's claim was based on just one "lone comment Katz allegedly made inviting Mr. McHattie to join the PWA network . . . ." The court found this "self-serving" allegation was not enough to support the fraud claim. At this point in the litigation, the only claim remaining against Katz was piercing the corporate veil.

On September 6, 2018, the trial court granted Katz's in limine motion, barring plaintiff from using documents at trial that were provided in discovery after the December 5, 2017 discovery end date. The parties had more than 700 days for discovery. The court also barred plaintiff from using documents that had been quashed based on pretrial motions, although the court indicated it could reconsider if defendants "open[ed] the door" at trial.

Plaintiff provided only one transcript—September 13, 2018—from the four-day trial. The independent contractors who worked at PWA testified they did not receive any income from PWA.

Wakatsuki testified he and Katz wanted to "create a business around our specialties of developing brokers . . . ." His specialty was insurance; Katz's was primarily trading stocks. Katz and he were independent contractors for First Allied. They found a location and began to recruit advisors. The advisors were

13

there for a commission; PWA was the tenant on the lease. PWA intended to stay in the lease, but McHattie demanded a $48,000 payment, of which $3000 was for back rent and the balance for legal fees. PWA left the premises shortly after this.

Wakatsuki denied trying to solicit business from McHattie. He testified he did receive $21,952.21 from First Allied in 2012 for the sale of a variable annuity, which is an insurance type of product.

Following a multi-day jury trial, concluding September 18, 2018, the jury unanimously found in favor of Katz on the remaining counts against him, declining to pierce the corporate veil of PWA. The jury found plaintiff did not prove by clear and convincing evidence that Katz exercised dominion and control over PWA such that they should be treated as one entity. It also found in favor of Wakatsuki on every issue in the amended complaint. It found Wakatsuki did not exercise dominion and control, should not be held personally liable for the judgment, did not misrepresent any fact to plaintiff that he knew to be false, did not cause harm to plaintiff nor did he make any transfer with the intent to defraud any creditor of PWA. On September 18, 2018, the trial court

14

entered judgment against plaintiff and in favor of defendants, dismissing the case with prejudice.[3]

Plaintiff appeals the no-cause judgment entered on September 18, 2018, and the orders entered on July 31, 2017, October 20, 2017, April 12, 2018, May 25, 2018, and September 6, 2018.

On appeal, plaintiff raises the following issues:

A. The Trial Court Erred in Denying Plaintiff's Motion to Compel Because Plaintiff Had The Right to Pretrial Discovery.

B. The Trial Court Erred in Granting First Allied Securities, LLC and First Allied Advisory Services, LLC['S] Motion to Quash Plaintiff's Subpoenas because Customer Lists are Assets of an Entity.

C. The Trial Court Erred in Denying Plaintiff's Motion for Reconsideration on the Motion to Compel Because Permitting Plaintiff Discovery was Likely to Lead to the Discovery of Admissible Evidence.

D. The Trial Court Erred in Granting Summary Judgment for Defendants Brad Katz, First Allied Securities, LLC, First Allied Advisory Services, LLC and Lifelong Investment Because Complete Discovery Was Not Permitted.

E. The Trial Court Erred in Granting Summary Judgment [to] Defendants First Allied Securities, LLC,

---

[3] There were post-judgment motions for sanctions that are not detailed herein. The September 18, 2018 judgment was amended in February 2019.

15

First Allied Advisory Services, LLC and Lifelong Investment Because They Were Unjustly Enriched by Being the Beneficial Tenants of the Premise and Not Paying Rent.

F. The Trial Court Erred in Granting Defendants Summary Judgment on their Motion for Reconsideration Based on the Entire Controversy Doctrine and Common Law Fraud.

> i. The Trial Court Erred in Granting Defendants Summary Judgment on their Motion for Reconsideration based on the Entire Controversy Doctrine (Appealable Ruling at Pa-15).

> ii. [The] Trial Court Erred in Granting Defendants Summary Judgment on their Motion for Reconsideration based on Common Law Fraud.

G. The Trial Court Erred in Granting Defendant Katz's Motion in Limine.

## II.

## A.

Plaintiff appeals pre-trial discovery orders entered on July 17, 2017, denying plaintiff's motion to compel and quashing plaintiff's subpoenas to First Allied, and the September 6, 2018 order that granted Katz's in limine motion to bar certain documents. We find no abuse of discretion by the trial court.

We generally "defer to a trial judge's discovery rulings absent an abuse of discretion or a judge's misunderstanding or misapplication of the law." Capital Health Sys., Inc. v. Horizon Healthcare Servs., Inc., 230 N.J. 73, 79-80 (2017). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. I.N.S., 779 F.2d 1260, 1265 (7th Cir. 1985)). "Discovery is intended to lead to facts supporting or opposing an asserted legal theory; it is not designed to lead to formulation of a legal theory." Camden Cty. Energy Recovery Assocs., L.P. v. N.J. Dep't of Envtl. Prot., 320 N.J. Super. 59, 64 (1999).

1.

Plaintiff requested client lists of PWA2 and LI. Plaintiff argues the July 17, 2017 orders constituted reversible error, and it should have been allowed discovery against the other entities.

We discern no abuse of discretion by the trial court. The documents requested were overly broad considering they predated the 2015 judgment by nearly four years. Plaintiff alleged the fraud occurred after the 2015 judgment. Plaintiff was never specific about what assets were transferred or what was

17

improper. Given the lack of specificity by plaintiff, it was not an abuse of discretion to deny the disclosure of customer lists of PWA2 and LI just because those limited liability companies were associated with Katz and Wakatsuki in some fashion. The court ordered PWA to produce its bank statements and tax returns. The trial court also explained plaintiff would have the "opportunity . . . to request additional information" if after reviewing those documents, it would have found something of interest. This was a reasonable limitation.

2.

Plaintiff requested customer lists from First Allied, arguing the court committed reversible error by quashing these subpoenas. Plaintiff argues that First Allied is the alter ego of PWA and that it was unjustly enriched by using the premises because its employees generated income there.

We are not persuaded the July 17, 2017 orders constituted an abuse of discretion. The judgment was entered against PWA. There was no contract between First Allied and PWA. Ordinarily, assets in brokerage accounts remain the personal property of the customer, not of the broker. Newbro v. Freed, 409 F. Supp. 2d 386, 395 (S.D.N.Y. 2006). Plaintiff presented no evidence to dispute First Allied's argument that the client lists of First Allied would only identify customers who had brokerage accounts with First Allied, not with PWA.

18

We also agree with the trial court the subpoenas were overly broad because plaintiff's claim is that PWA improperly transferred assets after the 2015 judgment.

3.

Plaintiff argues the trial court erred on September 6, 2018, by granting Katz's in limine motion to bar the use of certain documents at trial. Plaintiff contends these documents included records of defendants' website, and licensure and registration records at the SEC and FINRA. Plaintiff argues there was no prejudice to defendants.

The trial court did not abuse its discretion in granting this relief. The court excluded documents provided after the discovery end date and those that were quashed in connection with the subpoenas. The discovery end date was extended multiple times for a total of more than 700 days. Plaintiff contends the excluded information was publicly available. However, that simply means that it could have been obtained with due diligence prior to the multiple extended discovery end dates. See R. 4:17-7 (permitting amendments to interrogatories after the discovery end date if "not reasonably available or discoverable by the exercise of due diligence prior to the discovery end date."). The production of documents after the extended period for discovery should not be used as a further

19

extension, or—as in this case—a means to alter prior rulings of the court limiting discovery or quashing subpoenas.

## B.

Plaintiff argues the trial court erred on October 20, 2017, by not granting it reconsideration on the motion to compel because PWA was undercapitalized and failed to follow corporate formalities.

We review for abuse of discretion a trial court's order deciding a motion for reconsideration. Granata v. Broderick, 446 N.J. Super. 449, 468 (App. Div. 2016). Governed by Rule 4:49-2, reconsideration is appropriate for a "narrow corridor" of cases in which either the court's decision was made upon a "palpably incorrect or irrational basis," or where "it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

Here, the trial court took into consideration the bank statements and tax returns that plaintiff presented, but the motion was denied because plaintiff still was not specific about what transfers were alleged to be fraudulent. The court did not abuse its discretion in rejecting the claim for reconsideration.

A-1037-18T4

## C.

Plaintiff argues the trial court erred by granting summary judgment on April 12, 2018, before it had a fair chance to conduct discovery. Plaintiff maintains the list of customers was material and the court erred by not compelling it. Plaintiff contends it showed the presence of disputed material facts on each of the counts in the complaint that were dismissed.

Our review of an order granting or denying summary judgment is de novo using the same standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).

We agree with the trial court that there were no disputed issues of fact regarding the claims in the amended complaint for which summary judgment was granted. Count one alleged that PWA was dissolved improperly because it did not pay its liabilities and that defendants were liable. The record did not show First Allied or LI were involved in dissolving PWA. Katz was no longer

a member of PWA as of December 2014, which was months before it was dissolved. There was no evidence he was involved in its dissolution.

Count two alleged a violation of the UFTA. Our review of the record shows there was no genuine issue of material fact raised that First Allied, Katz or LI transferred or conveyed property of PWA fraudulently away from the reach of plaintiff with the intent to defraud in violation of the UFTA. See Gilchinsky v. Nat'l Westminster Bank N.J., 159 N.J. 463, 475 (1999) (requiring clear and convincing proof that an asset has been put "beyond the reach of creditors which would have been available to them" and this was done with the "intent to defraud, delay or hinder the creditor.").

Count three alleged unjust enrichment by defendants from PWA's tenancy. Plaintiff argues Wakatsuki and Katz used First Allied email addresses, they were listed as First Allied employees on the SEC/FINRA filing, and First Allied conducted business in New Jersey under the name PWA.

"'[T]he doctrine of unjust enrichment . . . rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another.'" Inv'rs Bank v. Torres, 457 N.J. Super. 53, 62 (App. Div. 2018) (alteration and omission in original) (quoting Callano v. Oakwood Park Homes Corp., 91 N.J. Super. 105, 108 (App. Div. 1966)). A claim for unjust enrichment

22

involves proof "'(1) that the defendant has received a benefit from the plaintiff,' and '(2) that the retention of the benefit by the defendant is inequitable.'" Wanaque Borough Sewerage Auth. v. West Milford, 144 N.J. 564, 575 (1996) (quoting Judy Beckner Sloan, Quantum Meruit: Residual Equity in Law, 42 DePaul L. Rev. 399, 408 (1992) (footnote omitted)).

The record did not show that First Allied received PWA's assets without consideration, that PWA's assets were transferred to First Allied or that First Allied was unjustly enriched. It was not disputed that Allied did not sign the lease. The record did not support that First Allied owned any of the websites in issue or that First Allied controlled PWA, PWA2, or LI. Wakatsuki and Katz signed independent contractor agreements with First Allied, received 1099's and testified in their depositions they were not employees. The record did not show that First Allied had an ownership interest in PWA, PWA2 or LI or that these entities were under common control with First Allied. In addition, the unjust enrichment claim fails because there was no indication plaintiff had an expectation First Allied would pay the lease or that First Allied expected to pay it.

Count four alleged defendants should be liable for PWA's judgment by piercing its corporate veil. Count five alleged that defendants should be liable because LI and PWA2 were successors to PWA.[4]

"[I]n order to warrant piercing the corporate veil of a parent corporation, a party must establish two elements: 1) that the subsidiary was dominated by the parent corporation, and 2) that adherence to the fiction of separate corporate existence would perpetrate a fraud or injustice, or otherwise circumvent the law." Verni ex rel. Burstein v. Harry M. Stevens, Inc., 387 N.J. Super. 160, 199-200 (App. Div. 2006).

Plaintiff did not show that there was a basis to pierce the corporate veil to hold First Allied responsible for PWA's judgment. A genuine issue of fact was not raised that First Allied dominated PWA or treated it as a subsidiary. First Allied did not create PWA. They had separate tax filings. There was no evidence it owned or controlled PWA, PWA2 or LI. And, plaintiff did not show evidence that First Allied was using PWA to commit a fraud or that it made any material misrepresentations that were relied on by plaintiff. The unreported case relied on by plaintiff was not precedential and it was distinguishable factually

---

[4] These counts proceeded to trial against Katz and Wakatsuki.

because it did not involve a separate company being held liable for a judgment against another.

Similarly, there was no evidence to show that LI was a successor to PWA. LI was formed years before PWA was dissolved.

D.

Plaintiff argues the trial court erred by granting Katz's motion for reconsideration on May 25, 2018, which dismissed count three, unjust enrichment, and count six, common law fraud.

The court found the entire controversy doctrine applied to the unjust enrichment claim once it was clear plaintiff's claim against Katz was based on his use of the property and not on his alleged failure to pay the judgment. "The entire controversy doctrine requires that all claims between parties 'arising out of or relating to the same transactional circumstances . . . be joined in a single action.'" Brennan v. Orban, 145 N.J. 282, 290 (1996) (omission in original) (quoting Brown v. Brown, 208 N.J. Super. 372, 377-78 (App. Div. 1986)). That mandate applies "'not only to matters actually litigated, but to all aspects of a controversy that might have been thus litigated and determined.'" Vision Mortg. Corp. v. Patricia J. Chiapperini, Inc., 307 N.J. Super. 48, 52 (App. Div. 1998) (quoting Mori v. Hartz Mountain Dev. Corp., 193 N.J. Super. 47, 56 (App. Div. 1983)).

25

McHattie testified at his deposition that he was aware Katz and Wakatsuki were members of PWA. He was aware that First Allied's name was on the door. Because plaintiff's revised claim against Katz for his use of the premises arose "out of or relating to the same transactional circumstances" as the underlying action for failure to make additional rent payments, plaintiff's claims against Katz and all other defendants should have been raised in the initial action. See Brennan, 145 N.J. at 290.

Plaintiff contends the court erred by reconsidering and then granting Katz's motion for summary judgment on count six, the common law fraud claim. We find no error in granting summary judgment on this claim given the lack of evidence as previously described supported only by "self-serving allegations" which were "not sufficient to survive a motion for summary judgment." Also, Wakatsuki testified contrary to this at trial, and in light of the verdict, the jury apparently believed him.

All the remaining claims against Katz and Wakatsuki were tried to completion, resulting in a verdict in their favor. Plaintiff does not directly challenge the jury's findings, only the discovery, reconsideration and summary judgment orders that preceded the trial. Having affirmed these orders, we also affirm the September 18, 2018 judgment.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

27